NIEROTKO v. SOCIAL SECURITY BOARD.

No. 9896.

Circuit Court of Appeals, Sixth Circuit.

May 14, 1945.

Ernest Goodman, of Detroit, Mich. (Ernest Goodman and Morton A. Eden, both of Detroit, Mich., on the brief), for appellant.

Hubert H. Margolies, of Washington, D. C., C. T. Dinu, of Detroit, Mich. (Francis M. Shea, of Washington, D. C., John C. Lehr and C. T. Dinu, both of Detroit, Mich., and Arnold Levy and Hubert H. Margolies, both of Washington, D. C., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

So far as federal reviewing courts are concerned, the legal issue presented by the appeal is one of first impression, and simply stated is whether "back pay" awards made by an employer in compliance with an order of the National Labor Relations Board, constitute "wages" under the Social Security Act, 42 U.S.C.A. § 301 et seq., for which the employee is entitled to credit on his Old Age and Survivors Insurance Account. The Social Security Board refuses to consider such awards as wages and the district court upheld its position in the present suit against it, by entering summary judgment for the defendant upon the pleadings.

The appellant is one of a number of employees of the Ford Motor Company, discharged on February 2, 1937, because of union activities. He was subsequently reinstated as an employee in response to an order of the National Labor Relations Board of August 9, 1939, the enforcement of which was by us directed in National Labor Relations Board v. Ford Motor Co., 6 Cir., 114 F.2d 905 (certiorari denied 312 U.S. 689, 61 S.Ct. 621, 85 L.Ed. 1126). On July 18, 1941, the Ford Motor Company paid the appellant $3501.32 as back pay

covering the period February 2, 1937 to September 25, 1939, since he failed to secure other employment during that time. Under agreement, however, the company is withholding 1% of this amount for the appellant's Social Security tax pending the outcome of the present litigation, and so presumably will not claim immunity from the excise tax in equivalent percentage. The Bureau of Old Age and Survivors Insurance of the Social Security Board refused to credit the back pay award on the ground that it does not constitute wages. The appellant appealed from the Bureau's determination to a' referee who, upon hearing, affirmed its determination, and upon subsequent appeal to the appeals council of the Social Security Board, the referee's decision was affirmed. The present suit was brought under § 205(g) of the Social Security Act. It is not a class suit, but we are advised that it is of major importance as a test case involving the status of ·thousands of back pay awards ordered by the National Labor Relations Board to illegally discharged employees throughout the country.

Section 2(3) of the National Labor Relations Act; 49 Stat. L. 450 (1935), 29 U.S.C.A. § 152(3), defines an employee as: "Any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment."

Section 10(c) of the Act, 29 U.S.C.A. § 160(c), authorizes the Labor Board, in addition to issuing cease and desist orders directed to employers guilty of unfair labor practices, to command "such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this act."

Section 209(a) of the Social Security Act defines "wages," for the purpose of the Old Age and Survivors Program, to mean "all remuneration for employment." Section 209(b) defines "employment" as "any service, of whatever nature, performed * * * by an employee for the person employing him." The basis for the Board's decision, therefore, is that notwithstanding the definition of an employee in the National Labor Relations Act, back pay awarded by the National Labor Relations Board is not remuneration for service performed within the meaning of the Social Security Act, for the illegally dis-

charged employee performs no service for his employer and the award, therefore, is not wages within the purview of the latter Act; that though the effect of an award of back pay may be to give the employee the same amount of money as he would have received had service been performed, it is not given him as wages.

In addition to justifying its decision by the letter of the Act, the Board suggests administrative difficulties in treating back pay as current wages during the period of unlawful discharge. It says that back pay is, of necessity, awarded and paid in quarters subsequent to those in which the individual was without work, and inasmuch as § 209(g) of the Act defines quarters of coverage as calendar quarters, an individual could only count as a quarter of coverage the calendar quarter in which the award was paid. This suggestion may easily be dismissed. If, upon consideration of the great humanitarian purpose of the Social Security Act in all of its aspects, it should be found that there is no statutory imperative that unlawfully discharged employees be denied its benefits, administrative difficulties in treating subsequently paid compensation as currently received wages are but meager support for the position of the Board. That such difficulties are not insuperable is demonstrated by its practice in crediting to the employee the differential between wages paid and the legal minimum under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., when payment is made in pursuance of an administrative order or a court decree.

The basic problem does not, however, yield to such simple solution, and difficulty is enhanced by the construction put upon back pay by other administrative agencies. The Commissioner of Internal Revenue, it is said, has held that back pay does not constitute wages within the meaning of Titles VIII and IX of the Social Security Act, and that the amounts paid were "on account of unemployment caused by an unfair labor practice of the employer, which amounts were not awarded to the employees because they rendered services." So the Labor Board has held that there need be no withholding from back pay for Social Security taxes. Pennsylvania Furnace & Iron Co., 13 N.L.R.B., 49, 55-56. Back pay has been held deductible for income tax purposes as an ordinary and necessary expense, but in a decision rendered October 15, 1942, the Comptroller Gen-

eral has ruled that a back pay settlement, before entry of a Labor Board order, was not a reimbursable item of cost under a cost-plus-fixed-fee contract. Resulting from the fault of the employer, the item could not be shifted to the government. It is therefore argued that consistency of construction by administrative agencies should not be disturbed by the courts under the doctrine applied in Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 74 L.Ed. 457; Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397; Norwegian Nitrogen Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796. But the statutes here involved are of such recent enactment, and the problem relatively so new, that we may well doubt that administrative construction is now so crystallized and frozen into the law that it should escape the consideration of courts, or that the failure of a Congress, absorbed in implementing the most colossal war effort of all time, to amend or clarify the Act, implies agreement with administrative interpretation of the legislative purpose.

To the man in the street or at the bench or machine, "wages" and "pay" are undoubtedly synonymous, and "back pay" suggests pay currently earned even though not currently received. This accords with dictionary definitions. Webster's International Dictionary defines "pay" as "remuneration, wages, salary," and "wages" as synonymous with "pay."

But it is said by the Board that the incidents and characteristics of an award of back pay are such that it is more appropriately classified as in the nature of damages and reparation for loss than as remuneration for service performed; that the concept of back pay does not fit into the pattern for wages established in Title II of the Social Security Act and in the corresponding provisions of the Federal Insurance Contribution Act, 26 U.S.C.A. Int.Rev.Code, § 1400 et seq.; that wages are tied to service performed, whereas back pay, like damages, is intended merely to put the worker in as good condition as he would have been but for the unlawful conduct of his employer. Back pay, it is urged, is compensatory, and it is untenable to hold it to be wages upon some theory of constructive earnings, or by resort to a fiction, or to so classify it by judicial fiat. Wages are not, however, always earned by the expenditure of physical or mental ef-

fort on the part of the employee. This the Board recognizes when it includes within the term "wages," vacation pay, sick and disability pay, pay while on state National Guard duty, retainer fees to consultants, etc. Social Security Board, Regulations No. 3, §§ 403.827; Social Security Board, Unemployment Compensation Interpretation Service, Federal Series, 1937, 47 SST 49. Instances may be multiplied where wages are paid not for current effort but in consideration of an employer's command of the employee's time, and wages are no less earned when an employee holds himself in readiness to perform, than when he actually performs. "They also serve, who only stand and wait."

██ This aspect of wages is not without recognition by the courts. In re B. H. Gladding Co., D.C.R.I., 120 F. 709. The concept that back pay is, by its nature, damages or a penalty, has been expressly rejected. Agwilines v. N.L.R.B., 5 Cir., 87 F.2d 146; Republic Steel Corporation v. N.L.R.B., 311 U.S. 7, 61 S.Ct. 77, 85 L. Ed. 6. The power to command affirmative action is remedial, not punitive. Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126. The concept of back pay in the National Labor Relations Act, as it has been developed in innumerable decisions of the Supreme Court and the several Courts of Appeal, is that it is a remedial device to restore the employee, in all respects, to a status extant prior to his unlawful discharge, and so associated are the terms "wages" and "back pay" that they are often used interchangeably by courts, as witness the separate opinion of Mr. Justice Black and Mr. Justice Douglas in the Republic Steel Case, supra. The "make whole" objective of the back pay order has been construed so that the employee is entitled, upon reinstatement, not only to the wages he would have earned, but to all other rights that would have accrued to him by reason of his employment had he not been unlawfully discharged. These have been held to include insurance rights, vacation rights, and seniority status. N. L. R. B. v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Republic Steel Corporation v. N. L. R. B., supra; Republic Steel Corporation v. N. L. R. B., 3 Cir., 114 F.2d 820; Third Annual Report of National Labor Relations Board, page 200. In National Labor Relations Board v. Waterman SS Co., 309

276

U.S. 206, 218, 60 S.Ct. 493, 500, 84 L.Ed. 704, it was said, "In the words of the Act, an employer cannot terminate his employees' 'tenure of employment, or any term or condition of employment' because of union activity or affiliation. * * * They embrace, as well, all elements of the employment relationship which in fact customarily attend employment. * * * "

We are asked to hold that of the rights of an unlawfully discharged employee protected by the Labor Act, all may be preserved, by administrative order, except the single right which in the exigencies of a post-war period may be the most important, and this on the ground that its preservation is precluded by a definition of employment as "service of whatever nature performed by an employee for the person employing him." The continuity of the employment relationship between an employer and his unlawfully discharged employee, under the National Labor Relations Act, is not denied. The right to compensation equal to wages is not denied. The point stressed is that the Act requires service, with connotation given to that term, so that it applies only when some physical or mental effort is expended by the employee on behalf of the employer. But "service" is not so or otherwise defined. The Congress was concerned primarily with compensation as a yardstick for both employer and employee contributions. If wages were paid they measured both the tax and the excise. Clearly it was not a condition contributing to either the humanitarian or economic purpose of the Act to determine whether the wages were earned or how. It is pointed out persuasively, we think, by Michael Fooner, formerly Associate Administrative Analyst for the Board, in 41 Michigan Law Review, 60, that if this extreme view were accepted it would place upon the Social Security Board an administrative burden, unique in character and far flung in its implications, and this, we think, is important. If services performed in the asserted meaning of that phrase, is a statutory element in the concept of wages, must there not then be an inquiry in every case as to whether the wages were earned by service? Admitting a contract of employment, an obligation to pay, and the liquidation of the obligation by payment, are the benefits of the Act not to be denied under the reasoning of the Board when no labor is performed? Tested, by reductio ad absurdum, its construction may not stand.

It is a familiar principle that we may look to the whole Act to ascertain the precise meaning of any of its provisions. We turn to an analysis of the Social Security Act in Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319. There we find that Title VIII applies to different types of tax,—an income tax on employees, and an excise tax on employers. The income tax on employees is measured by wages paid during the calendar year (§ 801, 42 U.S.C.A. § 1001). The excise tax on the employer is to be paid "with respect to having individuals in his employ," and like the tax on employees is measured by wages (§ 804, 42 U.S.C.A. § 1004). In the computation of wages all remuneration is to be included except so much as is in excess of $3000 [§ 811(a), 42 U.S.C.A. § 1011(a)]. The income tax on employees is to be collected by the employer who is to deduct the amount from the wages "as and when paid" [§ 802(a), 42 U.S.C.A. § 1102(a)]. These provisions speak in terms of a standard applied to remuneration paid to the employee in pursuance of an employment contract, or as the result of an employer-employee relationship, whenever received or however paid. The Social Security tax on the employee is a tax on income. If income, under the Internal Revenue Laws, is it not equally income under the Social Security Law?

When we give consideration to the rationalization in Helvering v. Davis, supra, by which the power of Congress to enact the Social Security Act under the General Welfare Clause, was sustained, the reasoning that the award of old age benefits was in response to a problem national in area and dimensions, to save men and women from the rigors of poverty and the haunting fear that such a lot awaits them, and when we consider that its enactment followed hard upon the passage of the National Labor Relations Act, and that both were the result of an integrated national labor policy designed to mitigate the hardships of an economic crisis which impelled the adoption of both, it seems inconceivable that the Congress, in its concurrent endeavor to prevent labor strife and preserve the continuity and stability of labor remuneration, could have intended that Social Security benefits should be denied to a large class of employees reasonably expected to come into existence by virtue of the remedial provisions of the National Labor Relations Act, and this by a defini-

tion of employment which, as now sought to be interpreted, is in conflict with its meaning in the earlier statute, unrealistic in the light of human experience, and may well have been purely fortuitous.

We are told that the Labor Board has not attempted to characterize back pay as wages within the meaning of the Social Security Act, nor, assuming feasibility and jurisdiction to enter such an order, has it found that creditability as wages under the Social Security Act is necessary to effectuate the purposes of the Labor Act generally, or in the particular situation giving rise to this appeal. That may be so, but that the Labor Board has not conceived of back pay as wages, is not so. In N. L. R. B. v. Killoren, 8 Cir., 112 F.2d 609, 137 A.L.R. 510, the Labor Board, as plaintiff, in its role as trustee for employees entitled to back pay, succeeded in obtaining an adjudication that a back pay award constituted wages in the payment of which employees were entitled to the priority accorded employees under § 64 of the Bankruptcy Act, 11 U.S.C.A. § 104. The court there rejected the notion that a back pay award was an allowance in the nature of damages, and, basing its decision upon a determination that Congress had specifically designated the allowance as back pay in a continued employment status, held that this sufficiently constituted the award as wages earned "to eliminate legal shadows."

The Congressional concept of back pay as current wages in a continuous employment relationship, is now illuminated by § 119 of the Revenue Act of 1943, amending § 107 by adding sub-section (d), 26 U.S.C.A. Int.Rev.Code, § 107(d), under which employees may allocate back pay awards over the period of discharge, and file amended income tax returns to include back pay as income for the years it would have been received, but for the unlawful discharge. The concept is not destroyed but emphasized and clarified (so as to avoid a construction equivalent to that here made) by distinguishing back pay from wages generally.

■ The National Labor Relations Act is designed to secure to employees their right freely to organize and designate bargaining agents. Discharge for activity in the exercise of such right is declared to be an unfair labor practice,

empowering the administrative agency to take such affirmative action as will effectuate the policies of the Act. This includes a restoration of the employee to his original status without impairment of any right originally possessed. We may not say that rights, the exercise of which it is national policy to encourage, may be exercised only at the peril of surrendering rights under other social legislation created for the protection of the same persons. It is true that the surrender is only for the duration of the unlawful discharge and that in many cases the credit for both income and excise percentages will be small. The principle is, however, important. Rights which the Labor Act protects are not by the Social Security Act destroyed. We agree with Fooner, supra, that this would be allowing principles of the Social Security Act to be thwarted by an employer's illegal act, and that it is precisely against the effects of such acts that national labor and social legislation has been created.

Judgment reversed and the cause remanded for further proceedings in conformity herewith.