## UNITED STATES v. FOGARTY.
### No. 13590.

Circuit Court of Appeals, Eighth Circuit.
Nov. 4, 1947.

John E. Garvey, Sp. Asst. to Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., Sewall Key, Lee H. Jackson, and Helen Goodner, Sp.Assts. to Atty. Gen., and Victor E. Anderson, U. S. Atty., and James J. Giblin, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for appellant.

Arthur M. Clure, of Duluth, Minn. (E. L. Fogarty, and McCabe, Gruber, Clure, Donovan & Crassweller, all of Duluth, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge..

This is an appeal by the United States from a judgment in the amount of $1,491.34 with 6 per cent interest, rendered against it in bankruptcy proceedings in favor of the trustee in the bankruptcy. The judgment is intended to compel payment to the trustee of said sum of $1,491.34, which the United States is withholding as a partial offset against taxes which the court found to be invalid. The facts were stipulated and we summarize them from our study of the record and the statements of facts made by opposing counsel (which are in conflict in some particulars) as follows:

### Summary of Facts.

Inland Waterways, Inc., was a corporation engaged in the shipbuilding business at Duluth, Minnesota, in which it employed about 200 persons. On December 19, 1942, it filed a petition for reorganization under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and Edward L. Fogarty was appointed trustee with authority to continue the operations of the bankrupt until a plan of reorganization was approved or until an adjudication of bankruptcy was made. It was soon ascertained that the continuation of the business was not justified and all the bankrupt's employees were discharged. On June 2, 1945, an adjudication of bankruptcy was made. The bankrupt owed its employees wages earned within ninety days prior to December 19, 1942, not exceeding $600 each, in a total amount of $44,168.89. These wage claims were allowed by the District Court on May 10, 1946, and assigned first priority for payment under Section 64, sub. a, of the Bankruptcy Act.

At the time it filed its petition, the bankrupt was constructing vessels for the United States Navy. Subsequently, the trustee and the Navy Department agreed in a compromise settlement that there was due the bankrupt on account of uncompleted work the amount of $14,505.38. On April 23, 1945, the trustee received a check for $10,972.18, representing the amount of $14,505.38 minus $3,533.20 retained by the United States to pay employment taxes on wages paid in 1942 due the United States from the bankrupt in this amount.

Said sum of $3,533.20 was made up of assessments of so-called "Title VIII" taxes and so-called "Title IX" taxes. Claims for these taxes had previously been filed with the trustee by the Collector of Internal Revenue and on May 10, 1946, they were allowed by the District court and assigned a priority for payment second only to the wage claims of $44,168.89.

On June 2, 1945, when the adjudication of bankruptcy was made, the trustee was ordered to pay a 25 per cent dividend on the labor claims having priority under the bankruptcy law. In June, 1945, the trustee paid wage claimants the amount of $10,530.38, in respect of wages earned by them as employees of the bankrupt prior to bankruptcy and having priority. The assets thereafter remaining in the trustee's hands will suffice only to provide an additional payment to the wage claimants of not to exceed 20 per cent.

The Collector of Internal Revenue demanded that the trustee file returns for, and pay employment and withholding taxes

in respect of the $10,530.38 payment, but he refused to do so. He did, however, supply to the Collector figures and information to assist the Collector to compute the amounts of such claimed taxes and no objection is made as to the methods of computation.

In October, 1945, employment taxes and interest of $209.33 were assessed on the $10,530.38 payment and in November, 1945, withholding tax and interest of $1,887.48 were assessed on the payment, the total being $2,096.81. The Collector filed claims for these taxes as an administrative expense. On December 27, 1945, the Commissioner of Internal Revenue advised the trustee that the amount of $1,491.34, representing part of the assessments for 1942 totaling $3,533.20, had been abated and that the amount abated would be credited against any other like taxes which were due, or be refunded. No part of the assessment of "Title VIII" taxes was abated.

Since the amount of $3,533.20 had been retained by the United States from the amount owed by it to the bankrupt, the $1,491.34 so abated was applied by the United States to pay in part its claims for employment and withholding taxes and interest for 1945 which had been assessed, as stated, in October and November, 1945, leaving a balance due the United States on these assessments of $900.44.

Upon these facts the District court concluded that the United States had a valid claim for employment taxes of $2,041.86 (i. e., $3,533.20 less $1,491.34) on wages paid by the bankrupt in 1942 and that it was entitled to collect this amount by deducting it from the amount owed by it to the bankrupt; that the assessments of employment and withholding taxes totaling $2,096.81 on the dividend payment in June, 1945, of wage claims by the trustee were invalid; and that the United States was not entitled to collect the amount of $1,491.34 as a partial payment on these assessments. Accordingly, it entered judgment in favor of the trus-

tee against the United States in the amount of $1,491.34, with interest at 6 percent from April 23, 1945.

The memorandum opinion of the District court is reported at 71 F.Supp. 134. This court has jurisdiction of the appeal under Section 128 (a) and (c) of the Judicial Code, as amended, 28 U.S.C.A. § 225 (a, c).

## Opinion.

The Government assigns error in the trial court's holding that the assessments of employment and withholding taxes in respect to the amounts paid by the trustee in bankruptcy under court order on account of wages earned by bankrupt's former employees prior to bankruptcy were not enforcible against the trustee and were invalid.[1]

(1) The Employment Taxes of $209.33 involved here are those imposed by Sections 1400 and 1410 of the Internal Revenue Code, 26 U.S.C.A. They are the federal insurance contributions taxes, originally levied by Sections 801 and 804 of the Social Security Act of 1935, c. 531, 49 Stat. 620. They are referred to generally as "Title VIII" taxes. The federal unemployment taxes, referred to as "Title IX" taxes, imposed on employers of eight or more originally by Section 901 of the Social Security Act, and for 1939 and subsequent years by Section 1600 et seq., of the Internal Revenue Code, are not involved in this case. Section 1400 levies a one per cent income tax on wages received in the year 1945 with respect to employment, Section 1401(a) requires the tax to be collected by the employer by deducting the amount of the tax from the wages *as and when paid,* and Section 1401(b) makes the employer liable for the payment of the tax.[2] Section 1410 levies upon an employer an excise tax, with respect to having individuals in his employ, of one per cent of the amount of wages paid by him during 1945. For purposes of both the employees' and employer's tax, Section 1426(a) defines "wages" as "all remunera-

---

[1] No previous case deciding the precise question was found and it has been very thoroughly briefed on both sides. The power of the District court to pass on the validity of the assessments is not questioned.

[2] The employer is liable to pay the tax whether or not he has deducted it from the wages of the employee. United States v. State of New York, 315 U.S. 510, 514–516, 62 S.Ct. 712, 86 L.Ed. 998.

tion for employment," with certain exceptions not applicable here, and Section 1426 (b) defines "employment" in part as "any service, of whatever nature, performed after December 31, 1939, by an employee for the person employing him," with exceptions for various special types of service not applicable here.[3] The term "employer" is not specifically defined for purposes of these taxes, and the only definition of "employee" is that it includes an officer of a corporation. Section 1426(d).

■ The social security legislation established a broad assistance program for the aged and others and levied the Title VIII and Title IX taxes to supply additional general revenue which when appropriated would yield funds to carry out the program. The constitutionality of the legislation is settled, Helvering v. Davis, 301 U.S. 619, 672, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319; Charles C. Steward Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293; United States v. State of New York, 315 U.S. 510, 62 S.Ct. 712, 86 L.Ed. 998; Illinois v. United States, 328 U.S. 8, 66 S.Ct. 841, 90 L.Ed. 1049, and the function of the courts is to apply the provisions so as to effectuate the declared intent of Congress. No part of that intent is made more clearly manifest than that the basis for the administration of federal old age benefits is wages. "Only those who earn wages are eligible for benefits. The periods of time during which wages were earned are important and may be crucial on eligibility under either the original act or the Amendments of 1939. * * * The benefits are financed by payments from employees and employers which are calculated on wages. The Act defines 'wages' for Old Age benefits as follows: 'Sec. 210. When used in this title—(a) the term "wages" means all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash, * * *.' Employment is defined thus: '(b) The term "employment"

means any service, of whatever nature, performed within the United States by an employee for his employer, except—.' " Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 639, 90 L.Ed. 718, 162 A.L.R. 1445. Undoubtedly if the $44,168.89 of wages here involved had been partially paid to the extent of the $10,530.38 by the bankrupt itself, it would have been liable for the taxes claimed. Those receiving the wages would have been rendered eligible for benefits to that extent and the periods of time fixed. The fact that at the time payments were made those receiving them might no longer have been in the employ of the company would not be material. And certainly in many relations a trustee in bankruptcy stands in the shoes of a bankrupt and the property in his hands, unless otherwise provided in the Bankruptcy Act, is subject to all of the equities impressed upon it in the hands of the bankrupt. Security Warehousing Co. v. Hand, 206 U.S. 415, 27 S.Ct. 720, 51 L.Ed. 1117, 11 Ann.Cas. 789. But if the trustee may not be held liable for the taxes here in question, it would seem that the broad purposes of the legislation would not be accomplished in the instances where the employer goes into bankruptcy and the wages due from him earned within ninety days of his bankruptcy are paid in whole or in part out of his assets through the bankruptcy proceedings.

It is contended for the trustee that such result can not be avoided because upon the occurrence of bankruptcy the bankrupt's estate is brought into the bankruptcy court and the distributions are made under the bankruptcy law and are payments of dividends ordered by the court and the character of the payments as wage payments is lost. It is pointed out that the wages here were not earned in any employment of the wage earners by the trustee or in doing work for him, and that he was never their "employer" within the meaning of the statute.

On the other hand, it is contended for the

---

[3] The exception in Section 1426(b) (6) for service performed in the employ of the United States Government or of an instrumentality of the United States, either wholly owned or exempt from the employer's tax under some other provision of law, does not fit this case. The services for which the trustee made payment here were performed in the employ of the bankrupt corporation, which was not the United States or one of its instrumentalities.

Government that the statutes imposing taxes payable by employers on wages paid with respect to employment ought to be liberally construed to accomplish their broad social purpose and should apply to a trustee in bankruptcy paying wage claims to his bankrupt's former employees. That the character of the payment as wages should be determinative of liability for the taxes, rather than whether the payor of the wages fits within the usual concept of an employer. That in paying wage claims the trustee stands in the shoes of the employer-bankrupt and should be equally subject to these taxes as the employer. That the trustee's $10,972.18 payment was precisely within the statutory definition of wages as remuneration paid for services rendered by an employee, and its nature was not changed when it was allowed as a claim against the estate and ordered paid. That the court order directing payment by the trustee did not create a different obligation; it recognized and sanctioned the contract right of the bankrupt's employees to earned wages. It is also claimed that long continued administrative construction supports the liability of the trustee for the taxes.

In support of the claimed administrative construction we are cited first to Section 402.227 of Treasury Regulations 106, which provides that:

"Remuneration for employment * * * constitutes wages even though at the time paid the relationship of employer and employee no longer exists between the person in whose employ the services were performed and the individual who performed them."

■ We think this regulation is within the permissible limits of administrative interpretation and is in furtherance of the purposes of the Acts. It properly emphasizes that the taxing provisions are concerned with the character of the payments as wages rather than with the relationship of the payor to the payee and recognizes that in the failure of the statute to define employers and employees specifically, the intent is to have those terms derive their

meaning from the definitions of wages and employment in Section 1426 (a) and (b). The tax was contemplated, though at the time the wages were paid employment may have ceased and there might be no one who would then come within the strict definition of an employer or an employee. The Regulation 'clearly indicates the administrative determination that the relation between the payor and payee of wages at the time of payment is not determinative and that it is the accrual and payment of wages that give rise to the tax.

S.S.T. 120, 1937—1 Cum.Bull. 375, is also cited holding that, "trusts or estates managed and conducted by a fiduciary should be held generally to be the employer under the provisions of Titles VIII and IX of the Social Security Act. This construction of the Act is applicable not only to strict trusts but also to corporations and estates whose affairs are being administered or liquidated by trustees in bankruptcy and State and Federal receivers, including bank liquidators." Also Section 29.52—2 of Treasury Regulations 111, which provides that where a corporation's property is in the custody of a trustee in bankruptcy, subject to court order, the trustee is required to perform all the duties and assume all the liabilities which would devolve upon the officers of the corporation if they were in control.

But though we consider that the cited Regulations tend to support the contentions for the Government, we think they find stronger support in the reasoning of the Supreme Court in Social Security Board v. Nierotko, supra.[4] There a wage earner was wrongfully discharged by his employer and was ordered reinstated with back pay by the National Labor Relations Board. He applied under § 205(c) (3) of the Social Security Act, 53 Stat. 1369, 42 U.S.C.A. § 405 (c) (3), to have the award of back pay which he received credited to him on his Old Age and Survivor's Insurance Account with the Board, and the Board refused to credit the "back pay" as "wages." Under agreement the employing company withheld 1% of the amount for the payment of

---

[4] The court affirmed the judgment of the Sixth Circuit Court of Appeals, 149 F.2d 273, and the facts presented appear more fully from inspection of both opinions.

the Social Security tax pending the outcome of the litigation in the courts. The ground of the Board's refusal to credit the back pay award was that it did not constitute "wages." The court stated the applicable statutory definition of "employment" and "wages" and noted that they were similar to those here involved and discussed not only the holding of the particular agency whose action was for review, but also that of the Bureau of Internal Revenue on the problem whether "back pay" was wages subject to tax under Titles VIII and IX of the Social Security Act. Holding that "back pay" must be treated as "wages," the court said:

"The purpose of the Federal Old Age Benefits of the Social Security Act is to provide funds through contributions by employer and employee for the decent support of elderly workmen who have ceased to labor. Eligibility for these benefits and their amount depends upon the total wages which the employee has received and the periods in which wages were paid. While the legislative history of the Social Security Act and its amendments or the language of the enactments themselves do not specifically deal with whether or not 'back pay' under the Labor Act is to be treated as wages under the Social Security Act, we think it plain that an individual, who is an employee under the Labor Act and who receives 'back pay' for a period of time during which he was wrongfully separated from his job, is entitled to have that award of back pay treated as wages under the Social Security Act definitions which define wages as 'remuneration for employment' and employment as 'any service * * * performed * * * by an employee for his employer. * * *' "

"Surely the 'back pay' is 'remuneration.' Under Section 10(c) of the Labor Act [29 U.S.C.A. § 160(c)], the Labor Board acts for the public to vindicate the prohibitions of the Labor Act against unfair labor practices (section 8, 29 U.S.C.A. § 158) and to protect the right of employees to self-organization which is declared by Section 7, 29 U.S.C.A. § 157."

The problem thus disposed of by the Supreme Court is essentially of the same nature as that presented here. There the money received by the workmen came to him through the award of the Board, as in this case it came to the workman through the judgment of the bankruptcy court, but in both cases it must be identified as "wages" in order to effectuate the intent of the Social Security Act and the Reve: 1e Acts which implement it. Neither the judgment of the Board in Nierotko's case nor the judgment of the bankruptcy court in this case rested on traditional processes of common law or bankruptcy. The Circuit Court of Appeals said in Nierotko's case (149 F.2d page 276):

"When we give consideration to the rationalization in Helvering v. Davis, supra [301 U.S. 619, 672, 57 S.Ct. 904, 81 L.Ed 1307, 109 A.L.R. 1319], by which the power of Congress to enact the Social Security Act under the General Welfare Clause, was sustained, the reasoning that the award of old age benefits was in response to a problem national in area and dimensions, to save men and women from the rigors of poverty and the haunting fear that such a lot awaits them, and when we consider that its enactment followed hard upon the passage of the National Labor Relations Act [29 U.S.C.A. § 151 et seq.], and that both were the result of an integrated national labor policy designed to mitigate the hardships of an economic crisis which impelled the adoption of both, it seems inconceivable that the Congress, in its concurrent endeavor to prevent labor strife and preserve the continuity and stability of labor remuneration, could have intended that Social Security benefits should be denied to a large class of employees reasonably expected to come into existence by virtue of the remedial provisions of the National Labor Relations Act, and this by a definition of employment which, as now sought to be interpreted, is in conflict with its meaning in the earlier statute, unrealistic in the light of human experience, and may well have been purely fortuitous."

Here the preference given to wage claims by Section 64, sub.a, of the Bankruptcy Act derives from similar considerations and recognizes the same necessity of drawing a sharp line of differentiation between

debts in general and claims for wages. The section imposes a special duty on the Bankruptcy court in respect to wage claims, and both as a practical matter and under the wording of the section the action of the court in allowing the wage claims preferentially and that of the trustee in paying them pursuant to the court's order, strictly preserves the identification of the wages both as to the time they were earned and as to the amounts due as wages. If the Supreme Court had not considered that that same identification carried through the award of the Board it could hardly have reached the conclusion it reached in Nierotko's case. In view of that decision and of Section 64, sub.a, we hold that the wages involved here did not lose their identity as such and that the assessment of employment taxes in respect of the partial payment of wages in this case was valid and enforcible against the trustee in bankruptcy.

(2) The Income Withholding Taxes of $1,887.48 here involved are referable to the Current Tax Payment Act of 1943, c. 120, 57 Stat. 126, by which Congress undertook to establish a system whereby individual taxpayers would pay the general income tax currently. Section 1622(a) of the Internal Revenue Code, as added by Section 2 of the Current Tax Payment Act, requires an employer making payment of wages to deduct and withhold from such wages a tax equal to an amount there specified, and Section 1623 makes the employer liable for the payment of the tax so required to be deducted and withheld. Section 1621(a) defines wages as "all remuneration * * * for services performed by an employee for his employer" with exceptions not material here, and Section 1621(d) defines "employ-er" as the "person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that" "if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer'[5] means the person having control of the payment of such wages."

Although much of what has been said concerning the liability of the trustee for the employment taxes is applicable to the question of his liability for these taxes, the last quoted statutory provisions appear on their face to apply directly to the situation here where the company which employed the wage earners has gone into bankruptcy and lost control over the payment of the wages and its trustee succeeded to the custody and control of its assets and actually made the payment out of such assets. The result would be no different if it is argued that the bankruptcy court rather than its trustee is "the person having control of the payment of such wages." There is no pro-. vision excepting a court from the requirement of withholding on amounts paid an employee as defined in Section 1621(c) and Section 1621(d) plainly indicates the intent to include the United States and its instrumentalities as employers. Section 405.105 of Treasury Regulations 116 includes agencies of the United States within the definition of employed. We think, however, that the trustee was the one in control of the payment of wages within the intent of Section 1621(d). The purpose is to treat the actual payor of the remuneration as the employer for withholding and payment purposes.[6]

There appears to have been no adminis-

---

[5] An exception is made that the term "employer" does not have this meaning in connection with determining whether a payment is "wages" within the meaning of Section 1621(a).

[6] S.Rep.No.221, 78th Cong. 1st Sess. (1943 Cum.Bull. 1314), explained with respect to this definition (pp. 19–20): * * * * Under the House bill and under the bill as reported by your committee, the definition of withholding agent has been eliminated. Both bills generally define the term "Employer" to mean the person for whom an individual performs or performed any service of whatever na-

ture, as the employee of such person. This general definition is not adequate, however, to cover certain special cases, such as the case where the local agent of a nonresident alien individual, foreign partnership, or foreign corporation pays wages to a citizen or resident of the United States, and the case of the person making payment of wages in situations where the wage payments are not under the control of the person for whom the services are or were performed, as, for instance, in the case of certain types of pension payments. The House bill provided for these cases by an ex-

trative ruling expressly stating that a trustee in bankruptcy is an employer within Section 1621(d) and 1622 for withholding tax purposes, but S.S.T. 120, supra, providing that a trustee is an employer for the purposes of the employment taxes, may be regarded as pertinent here, for as was stated in H. Conference Rep. No. 510, 78 Cong., 1st Sess., p. 28 (1943 Cum.Bull. 1351):

" * * * the methods of collection, payment, and administration of the withholding tax were coordinated generally with those applicable to the Social Security tax imposed on employees under Section 1400 of the Code. This proposal was made in order to facilitate the work of both the Government and the employer in administering the withholding system."

Not only are the two types of withholding tax intended to operate alike in so far as employers are concerned, but the trustees in bankruptcy should be treated as the employer for the further reason that he, for general purposes, stands in the shoes of the bankrupt and is so treated for other income tax purposes. Section 29.52—2 Treasury Regulations 111.

■ Under Section 35 [7] of the Internal Revenue Code the employee from whose wages a tax has been deducted and withheld under Section 1622 is entitled to a credit against his total income tax for the year equal to the amount withheld, and Section 1622(d) prohibits collection of the tax from the employer who has failed to withhold in cases where the employee has paid his income tax in full, including the amount which should have been withheld. But the employer is not relieved of his liability for the tax until the employee has in fact paid what the employer owes, and even then he remains liable for penalties and additions to the tax resulting from his failure to withhold. The trustee here is thus primarily liable for the employees' income tax to the extent required to be withheld and he is the one to whom the statute looks for the tax. In this case, there is no proof that any of the wage earners have paid income tax for the year 1945 sufficient to discharge the withholding taxes due on the trustee's payment to them. Hence, on the present record there is no basis for holding that the trustee is not liable for any of the withholding taxes assessed against the bankrupt's estate.

■ (3) The taxes which we conclude are valid and enforcible against the estate of the bankrupt should be allowed and classified as an expense of administration having priority under Section 64, sub.a, of the Bankruptcy Act. The taxes were not payable at the time the petition was filed by the bankrupt and only accrued "as and when paid," that is, on the actual payment of 25% of the wage claims during the administration of the estate pursuant to the orders of the bankruptcy court. State of Missouri v. Gleick, 8 Cir., 135 F.2d 134, 137; United States v. Killoren, 8 Cir., 119 F.2d 364, certiorari denied 314 U.S. 640, 62 S.Ct. 78, 86 L.Ed. 513; In re Lambertville Rubber Co., 3 Cir., 111 F.2d 45; cf. People of State of Michigan, by Haggerty, v. Michigan Trust Co., 286 U.S. 334, 52 S.

---

ception to the general definition of the term "employer" which provided that if the wages are paid by a person other than the person for whom the services are or were performed, the term "employer" means the person paying such wages. The committee bill has restated the exception in order to make clear that it is a departure from the basic purpose to centralize responsibility for withholding, returning, and paying the tax and furnishing receipts.

"Accordingly, the bill provides in Section 1621(d) (1) that if the person for whom the services are or were performed does not have control of the payment of the wages for such services, the term "employer" means the person having control of the payment of such wages. * * *"

See also H.Rep.No.401, 78th Cong., 1st Sess., pp. 23–24, (1943 Cum.Bull. 1283), which states that the definition of the term "employer" has been broadened to include "persons paying wages for services performed for another." The Senate definition was ultimately adopted. H. Conference Rep.No.510, 78th Cong., 1st Sess., pp. 30, 31.

[7] Section 35, as added by Sec. 172, Revenue Act of 1942, c. 619, 56 Stat. 798, as amended by Sec. 3, Current Tax Payment Act of 1943, c. 120, 57 Stat. 126, Credit for Tax withheld on Wages, 26 U.S.C.A. Int.Rev.Code, § 35.

**34**

Ct. 512, 76 L.Ed. 1136; Ingels v. Boteler, 9 Cir., 100 F.2d 915, affirmed, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78.

Other questions have been presented on the appeal, but our determination that the assessments of employment and withholding taxes amounting to $2,096.81 on the $10,-530.38 payment on wage claims were valid and enforcible against the trustee obviates the necessity of passing upon or discussing them. The judgment is reversed with direction to allow the claim for employment and withholding taxes, deducting the $1,-491.34 as an offset and ordering the balance of $900.44 to be classified for payment as an expense of administration.

Reversed with directions.