**In the Matter of RICHARDSON DINNER THEATRE, INC., Bankrupt.**

**No. BK–3–2707–G.**

United States District Court,
N. D. Texas,
Dallas Division.

Oct. 6, 1976.

James S. Mahon, Dallas, Tex., for trustee.

L. E. Creel, III, Dallas, Tex., for Bankrupt.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

The United States appeal of the decision of the Bankruptcy Judge came on for consideration before the Honorable Robert M. Hill, United States District Judge. After considering the record on appeal and the arguments, the court is of the opinion that the Bankruptcy Judge's findings of fact and conclusions of law should be affirmed.

This case began under Chapter XI of the Bankruptcy Act but subsequently expired in straight bankruptcy. The remains of the bankrupt's estate are lean; no claims beyond the second priority may partake. The bone of contention between the government and trustee is the priority, if any, to be assigned employer's FICA taxes generated by wages earned before the date of bankruptcy but paid after bankruptcy. The government contends that such taxes are "costs and expenses of administration"—a first class priority under Section 64a of the Bankruptcy Act, 11 U.S.C. § 104(a). The trustee argues and the Bankruptcy Judge agrees that these taxes are fourth class priorities under Section 64a—"taxes legally due and owing by the bankrupt." Also, in light of *Otte v. United States*, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974), the court must consider an alternative urged by neither litigant—that such taxes are second priority "wages."

■ Before discussing the merits of each alternative, a note on methodology is in order. Both litigants and the court share the feeling that this kind of expense ought to fit into some priority, but all three priorities present significant problems. The best arguments are negative: any two of the priorities are inappropriate; the third becomes more urgent and therefore more plausible. This approach, however, is completely circular. The court assumes that the Bankruptcy Act generally favors equal distribution to creditors and that "if one claimant is to be preferred over others, the purpose should be clear from the statute." *Nathanson v. NLRB*, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). If none of the priorities can stand unassisted, all must fall and the employer's FICA tax is entitled to no priority.

*First priority: costs and expenses of administration.*

The first priority, urged by the government in this case, is most easily eliminated. The authority for this position is a line of cases beginning with *United States v. Fogarty*, 164 F.2d 26 (8th Cir. 1947), which applied the first priority to employer's and employee's FICA taxes. The *Fogarty* holding was criticized by commentators, e. g. *The Folly of the Fogarty Case*, 32 Ref.J. 54 (1958), and was rejected by the Third Circuit in *Matter of Connecticut Motor Lines*, 336 F.2d 96 (3d Cir. 1964). The latter case roundly criticized the analysis in *Fogarty*, pointing out that all cited precedents for the first priority involved taxes on activities related to developing, maintaining, or distributing the bankrupt's estate. *Connecticut Motor Lines*, 336 F.2d 96, 99. The *Fogarty* reasoning—that a tax is an expense of administration because it arises after the date of bankruptcy—has now also been rejected by the Supreme Court in *Otte v. United States*: "We think that more than a general observation that the taxes arose during bankruptcy is required to dignify withholding taxes with the prime status of first priority." 419 U.S. 43, 56–67, 95 S.Ct. 247, 256, 42 L.Ed.2d 212 (1974).

■ Although *Otte* dealt only with income withholding and employee's FICA taxes, its observation about the relation of taxes accruing after the date of bankruptcy to first priority expenses is a general observation, equally applicable to the employer's FICA tax. The employer's tax in the present case has no relationship to the preservation, development, or distribution of

the bankrupt's estate and thus cannot be an expense of administration. The government's argument [1] that this is a tax on the activity of distribution is fallacious. It is rather a tax on the wages themselves. *See Connecticut Motor Lines,* 336 F.2d 96, 100. Also, the argument in *Otte* and *Connecticut Motor Lines*—about the distortion created by placing the employee's FICA tax ahead of the wages generating the tax—pertains likewise to the employer's FICA tax.

*Second priority: wages.*

■ *Otte* ultimately categorized as second priority withholding income taxes and employee's FICA taxes on second priority wages distributed by the trustee in bankruptcy. 419 U.S. at 58, 95 S.Ct. 80. Employer's FICA taxes, however, are distinguishable in that, while generated by the wages and not accruing until the wages are paid, they are not withholding taxes on the wages but rather an excise tax on the employer. The language of *Otte* in describing the withholding taxes points up this difference:

> The withholding taxes are, in full effect, *part of the claims themselves* and derive from and are *carved out of the payment of those claims.* We therefore fully agree with the Second Circuit's observation, [*In re Freedom Land, Inc.*] 480 F.2d [184] at 190: *"Conceptually* the tax payments should be treated in the same way as the wages from which they derive and *of which they are a part."*

419 U.S. at 57, 95 S.Ct. at 256 (emphasis added).

A clearer explanation of the relationship between second priority wages and employee's FICA and income taxes is given in *In re Miller Ready Mix Koncrete Corp.,* 348 F.Supp. 401 (D.Utah 1972), a very well reasoned opinion:

1. Brief of the United States at 7.

2. In *United States v. Embassy Restaurant,* 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959), the court discussed how Congress had once allowed a priority for workman's compensation claims, but under a classification separate from

> Wages paid to claimants under section 64a(2) are gross wages and include withholding taxes which, although paid to the government, are "constructively received" by the claimant. Payment of the combined amount, although apportioned between the claimant and the government, may be considered the payment of a second priority claim in full. . . .

*Id.* at 404.

One can argue in opposition that in an economic sense the employer's FICA taxes are wages. They arise in connection with employment. They benefit the old or sick employee in that they partially fund payments to such employees. In this regard they seem analogous to pension plans or health insurance paid by the employer. They present a cost to the employer which he would not bear but for the fact of employment.

The court, however, concludes that "wages" should not be defined in this context to include employer's FICA taxes. First, the employer and employee themselves do not consider this tax a part of the agreed compensation. The wage-earner considers withholdings from his paycheck as a confiscation of his money in a real psychological sense. He does not regard the employer's social security tax as money which he would otherwise receive. And there would indeed be little justification for such a belief, especially on the part of poorer employees, most in need of this priority, who often make the minimum wage.

Second, not every economic cost associated with employment can be considered wages.[2] For example, one would not so classify the costs of investigating a job applicant, of complying with health or safety laws, of workman's compensation insurance, etc.

Third, the "benefit" argument—that it is not unjust to make the employee pay this

wages. "It is therefore evident that not all types of obligations due employees from their employers are regarded by Congress as being within the concept of wages, even though having some relation to employment." *Id.* at 32, 79 S.Ct. at 556.

tax because of its important social purpose, to benefit the employee—flies in the face of statutory intent that the employee should only partially finance the benefits of this system. Inclusion as wages makes the employee pay his employer's share of this tax. If the employer's burden must fall on someone, the general policy of the Bankruptcy Act is clear: to the extent of $600, wage earner's claims are preferred to tax claims (unless the tax claim is also a cost of administration).

Which brings us to the fourth and most important argument militating against the second priority—the policy of the Bankruptcy Act behind this priority. Congress intended to protect wage earners who have no savings and who can least afford to lose their sustenance.[3] Such a priority should theoretically provide a "protective cushion" for the employee.[4] This cushion is fairly austere, only $600. But it is obviously intended to soften the present impact of loss of wages, not to brighten one's declining years or cheer the disabled. Therefore, a court should be loath to diminish this limited protection by a broad reading of "wages" which lessens the worker's recovery.

This result was reached by the Supreme Court in *Embassy Restaurant, supra,* a highly analogous case.[5] Representatives of a union welfare fund, to which the bankrupt was contractually bound to make payments, filed claims for unpaid contributions. They argued that such payments were bargained for and benefitted the employees; therefore they were wages. The court rejected this argument for the reasons previously discussed:

These payments, owed as they are to the trustee [of the welfare fund] rather than to the workman, offer no support to the workman in periods of financial distress. Furthermore, if the claims of the trustees are to be treated on a par with wages, in a case where the employer's assets are insufficient to pay all in the second priority, the workman will have to share with the welfare plan, thus reducing his own recovery. 359 U.S. at 33–34, 79 S.Ct. at 557.

If the employer's FICA taxes were assigned a second priority, the workman's limited recovery would likewise be diminished.[6] The court therefore concludes that defining wages in a broad economic sense, to include employer's FICA taxes, would be inconsistent with the intent of the Bankruptcy Act.

*Fourth priority: taxes which became legally due and owing by the bankrupt.*

Because of the procedures for assessing and collecting taxes vary so widely, the contours of the fourth priority are frequently indistinct. Nor are they made sharper by the language of the statute—"legally due and owing by the bankrupt"—or that other judicial incantation—"accrual" of the tax. The words are more a conclusion than a test. As the Bankruptcy Judge pointed out in his opinion, the tax in question could have "accrued," in some sense of the word, at many points in the history of this case: when the obligation to pay the wages accrued, when it became apparent that the trustee would pay some or all of the wages, or only when these proceedings terminate and the first priority costs of administration have been totaled.

---

3. *See* cases cited in 3A Collier § 64.201[3] at 2112 n. 7–9.

4. *United States v. Embassy Restaurant,* 359 U.S. 29, 33, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959).

5. *But see Dunlop v. Tremayne,* 62 Cal.2d 427, 42 Cal.Rptr. 438, 398 P.2d 774 (1965), in which the California Supreme Court held employer payments to a union welfare fund were "wages" under a state priority law applicable to assignments for the benefit of credits. The

court, however, laid great stress on the fact that the payments were bargained for, unlike the taxes in the instant case.

6. Assigning second priority to employee's FICA and income withholding taxes does not lessen the employee's recovery since he or she would be ultimately liable for the tax even were it not withheld. *Edwards v. Commissioner of Internal Revenue,* 39 T.C. 78, 83–84 (1962); *Ruby Johnson Spradley v. United States,* 74–2 U.S. T.C. ¶ 9498 (E.D.Tex.1974).

The government argues[7] that under the language of the taxing statute, actual liability for the employer's FICA tax does not arise until the wages are paid—a post-bankruptcy event. 26 U.S.C. § 3111. Moreover, Treasury regulations impose liability for employer's FICA taxes "at the time when the wages are paid by the employer" 26 C.F.R. § 31.3111–3. The tax "attaches" at this time. *Id.* Nevertheless, the court does not consider that, given the wide disparity of taxing statutes, the time at which a tax "attaches" under the taxing statute should necessarily control § 64a(4) of the Bankruptcy Act, reducing it from coherent policy to random patchwork. Instead, the court must look to the statutory purpose of the Bankruptcy priority scheme.

■ "By establishing a fourth priority dealing specifically with taxes, Congress apparently intended to express a general preference for tax claims over the claims of general, non-priority creditors." *Miller Ready Mix Koncrete,* 348 F.Supp. at 405. The priority provisions of § 64a seem generally to anticipate that a tax arising during administration will receive first priority treatment while a tax arising prior to administration will receive fourth priority treatment. The confusion in this case is due to the hybrid nature of the employer's FICA tax in this situation: it is determinable only after administration while unrelated to the activities of administration; it is attributable wholly to events before bankruptcy but is contingent in amount on the assets in the bankrupt's estate.

The court feels that the genesis of the employer's FICA tax in prebankruptcy events should control its characterization. The obligation to pay the wages which generates the tax is fixed before the date of bankruptcy. The amount of the tax is easily calculable and entirely limited by prebank-

ruptcy events. Although part or all of the tax may be abated due to the inadequacy of the estate to pay the second priority wages, this contingency does alter the characterization of the tax as a prebankruptcy obligation. Payment of any prebankruptcy obligation is contingent on sufficient assets in the estate.

■ Therefore, while it is reasonable outside of bankruptcy to speak of the employer's FICA tax as accruing when the wages are paid, it is inconsistent with the policy of the Bankruptcy Act to dismiss the priority of this tax because of the sequential manner in which priorities are paid. The tax obligation, like the underlying wage obligation, is attributable to and limited by prebankruptcy events. If the bankruptcy trustee stands in the bankrupt's shoes for purposes of paying wages (and thus becomes liable under the Internal Revenue Code for income withholding and social security taxes), he should also stand in the bankrupt's shoes for purposes of paying the taxes on the wages. The court therefore holds that the employer's FICA taxes in this case are "legally due and owing by the bankrupt."

The court's sole reservation about this conclusion concerns language used by the Supreme Court in *Otte.* In rejecting the fourth priority for *employee's* FICA taxes on prebankruptcy wages distributed in bankruptcy; the Court remarked that the tax did not become "due and owing" until after bankruptcy.[8] Since the employer's FICA tax arises in much the same way as the employee's FICA tax, this language might indicate a result different than ours. Nevertheless, because taxing statutes are so many and variegated, and because the Bankruptcy Act must govern the interpretation of these taxes in each individual case, the court does not believe that *Otte* compels a contrary conclusion. Because the taxes in

---

7. The government argues under the misapprehension that, should the fourth priority prove inappropriate, the first priority somehow becomes more plausible. Rather, the tax in question would be entitled to no priority if the fourth cannot be reasonably applied.

8. "We readily reject the fourth priority. The withholding taxes are not taxes which became due and owing by the bankrupt. As has been noted above, the taxes did not become due and owing at all until the claims, constituting wages, were paid. This took place after bankruptcy, not before." 419 U.S. at 56, 95 S.Ct. at 256.

*Otte* were withholding taxes, partaking of the nature of the wages, it was logical for the court to handle the tax liability like it is handled outside of bankruptcy: arising only when the wages are paid. In the present case, however, the taxes are not wages, and the court must decide anew which of the several times that this hybrid tax "accrued" is most relevant to bankruptcy policy. For reasons stated previously, the court concludes that the tax in question arose in prebankruptcy events and properly belongs in the fourth priority.

This is admittedly a less than fully satisfying distinguishment from *Otte*, but it is one suggested to the court by a strong legislative preference for tax claims over general, non-priority claims, a result entirely consistent with the result in *Otte*.

It is therefore ORDERED that the findings of fact and conclusions of law entered by the Bankruptcy Judge in this case are AFFIRMED. The government's claim for employer's FICA taxes is properly a claim entitled to fourth priority status under Section 64a(4) of the Bankruptcy Act.