In the Matter of CONNECTICUT MOTOR LINES, INC., Bankrupt.

John H. McKeever, Trustee, Appellant.

No. 14645.

United States Court of Appeals Third Circuit.

Argued March 5, 1964.

Decided Aug. 12, 1964.

As Amended Nov. 5 and Dec. 15, 1964.

Rehearing Denied Nov. 9, 1964.

E. G. Scoblionko, Allentown, Pa., for appellant.

Karl Schmeidler, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., Sidney Salkin, Asst. U. S. Atty., on the brief), for appellee.

Before McLAUGHLIN and FORMAN, Circuit Judges, and LEAHY, District Judge.

FORMAN, Circuit Judge.

This is an appeal by John H. McKeever, Trustee in Bankruptcy for Connecticut Motor Lines, Inc., from an order by the United States District Court for the Eastern District of Pennsylvania reversing an order of the Referee in bankruptcy.

On May 28, 1958, Connecticut Motor Lines, Inc. was adjudicated a bankrupt in the United States District Court pursuant to its voluntary petition filed that day. Among the claims filed by creditors of the Bankrupt were those for unpaid wages and vacation pay earned within the immediate three months period prior to bankruptcy, and in some instances for wages and vacation pay earned within an earlier period. Those with claims for wages and vacation pay earned within the three months immediately preceding the bankruptcy rightfully asked for, and were allowed, a priority distribution under Section 64, sub. a(2) of the Bankruptcy Act.[1] Claimants with a wage accrual which preceded the three months' period qualified for dividends as general creditors of the Bankrupt.

The Referee's order provided for a distribution of $20,154.81 to be made to wage claimants entitled to Section 64, sub. a(2) second priority status. After isolating other priority matters, a balance of $145,313.42 was available for distribution of dividends to general creditors, including the pre-three month wage claimants. The Referee's order neither made provision for deductions of employees' contributions for income withholding and social security taxes[2] from the sums distributed to priority and nonpriority wage claimants, nor for payment of the employer's social security excise.[3] Accordingly, the United States filed a petition for review with the District Court, that court reversing the Referee and holding the Trustee liable for all the above-mentioned taxes as a first priority administrative expense.[4]

---

1. Bankruptcy Act § 64, sub. a(2), 11 U.S.C. § 104, sub. a(2) (Supp. V. 1964):
 "§ 104. Debts which have priority
  "(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (2) wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding * * *."

2. Int.Rev.Code of 1954, §§ 3402, 3101, 3102.

3. Int.Rev.Code of 1954, § 3111.

4. *In re* Connecticut Motor Lines, Inc., 223 F.Supp. 189 (E.D.Pa.1963). Bankruptcy Act, § 64, sub. a(1), 11 U.S.C. § 104, sub. a(1) (Supp. V. 1964):
 "§ 104. Debts which have priority
  "(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of the bankrupt estates, and the order

Though novel for this court, the issue presented on appeal is a recurring one, *viz.*, what status in the order of creditors' priorities is to be given a Government claim for income withholding and social security taxes arising from wages accrued prior to bankruptcy, but paid during bankruptcy as a second priority matter, or as a dividend to general creditors?

## I

It is well settled that taxes arising from transactions completed in all respects prior to bankruptcy are to be treated as fourth priority items.[5] The problem faced here, however, is a hybrid —there has been an accrual of wages prior to bankruptcy, but their payment was held in abeyance until the second priority and general creditor distributions under the Bankruptcy Act. Though the Government's right to income withholding and social security taxes is fixed in the struggle among pre-bankruptcy creditors, the provisions of the Bankruptcy Act are clear neither as to what constitutes a pre-bankruptcy tax claim subject to fourth priority status as distinguished from a post-bankruptcy tax claim, nor what the Government's rights are once a post-bankruptcy tax claim is established. In its relationship to an estate as a taxpayer, the Government "finds itself tacitly referred to the wisdom of the courts."[6]

The first enunciation on the subject appeared in the leading case of *United States v. Fogarty*[7] and subsequent cases,[8] all relied upon by the Government but questioned by the Trustee. In upholding the Government's claim for taxes based on wages earned prior to bankruptcy, but distributed in bankruptcy, facts of the type before us on this appeal, the United States Court of Appeals for the Eighth Circuit, in *Fogarty*, concluded that as the Internal Revenue

---

of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition \* \* \*."
Though the August 13, 1963 order of the District Court, through its reliance on United States v. Fogarty, 164 F.2d 26 (8 Cir. 1947), has apparently resulted in an allowance of the Government's entire tax claim, both on the employees and the employer, the Trustee was merely directed to withhold the income and social security taxes from the employees' distribution, no mention being made of withholding the employer's excise, as a first priority matter, from the general assets. The District Court's order stated:
"AND Now, this 13th day of August, 1963, the order of the referee authorizing the payment of priority wage claims without requiring payment to the United States of withholding income and social security taxes thereon is reversed and the record is remanded to the referee with the direction that the trustee *withhold from wage claimants in this bankruptcy proceeding* the federal income and social security withholding taxes involved in this case and that the trustee pay these taxes to the United States." *In re* Connecticut Motor Lines, Inc., *supra*, at 191. (Emphasis added.)

Such an omission is characteristic of the difficulties advocates and courts have had in segregating the employer's excise from the employees' contributions in analyzing the impact of the allowance of these taxes *as a first priority matter* on a consistent and rational development of bankruptcy law. See note 35 *infra*.

5. Bankruptcy Act, § 64, sub. a(4), 11 U.S.C. § 104, sub. a(4) (Supp. V. 1964):
"§ 104. Debts which have priority
"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be \* \* \* (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof \* \* \*."

6. Wurzel, *Taxation During Bankruptcy Liquidation*, 55 Harv.L.Rev. 1141, 1142 (1942).

7. 164 F.2d 26 (8 Cir. 1947).

8. Lines v. State of California, Dept. of Employ., 242 F.2d 201 (9 Cir.), rehearing denied, 246 F.2d 70 (9 Cir.), cert. denied, 355 U.S. 857, 78 S.Ct. 86, 2 L.Ed. 2d 64 (1957); United States v. Curtis, 178 F.2d 268 (6 Cir. 1949), cert. denied, 339 U.S. 965, 70 S.Ct. 1001, 94 L.Ed. 1374 (1950); *In re* Daigle, 111 F.Supp. 109 (D.Me.1953); see also *In re* John Horne Co., 220 F.2d 33 (7 Cir. 1955).

Code made the wage payment a prerequisite to the attachment of the tax, and as that wage payment was accomplished after the filing of the bankruptcy petition, the Government's tax claim was a post-bankruptcy claim. The Eighth Circuit then held that such tax claims were not fourth priority items, but as post-bankruptcy expenses were first priority costs and expenses of administering the bankrupt's estate.[9]

In determining whether to accept as persuasive precedent the ruling in *United States v. Fogarty*, an analysis of the foundation of this leading decision can be revealing. The ultimate result in *Fogarty* rests on a number of cases which lend little support to that holding, and if anything, detract from the reasoning

of the Eighth Circuit.[10] In all the cases cited, the trustee or bankrupt was taxed on activities involved in further developing the bankrupt's assets or in seeking to maintain such assets for the maximum benefit of creditors. Post-bankruptcy taxation such as this has long been viewed by the courts as part of classic administration expenses. It is of import then that one of the leading treatises, in noting the thrust of the *Fogarty* ruling, mistakenly cited the case for the classic proposition that "any such taxes as accrue during continuance of business by a receiver or trustee are considered part of the expense of administration." [11] Such a misconception of Fogarty could have arisen because courts construing activities aimed at developing or preserv-

9. In *Fogarty*, as distinguished from the case now before us, if the Government had pressed for inclusion of such a claim as a fourth, rather than a first, priority matter, the bankrupt's assets would have been inadequate to pay fourth priorities. As it was, second priority wage claimants only received a 25% dividend in *Fogarty*. Thus, for the Government to receive the full amount of its claim in the *Fogarty* liquidation, it had to sustain that claim as a matter of the first priority. Once having established such a precedent, an inconsistent theory could hardly be argued where in subsequent cases, as here, ample funds ($145,313.42 in the immediate case) remain for general creditors and could be tapped to pay the contested claims as fourth priority matters. Thus, the Government's successfully sustained position, consistently reargued to strengthen its approach towards tax claims of this type, seems to have arisen from a need to establish a first priority precedent or be without a remedy in bankruptcy in cases where the bankrupt's assets are insufficient to reach lesser priorities.

It should be noted at this point that the Eighth Circuit in Fogarty was faced with the argument that the trustee did not owe such taxes under any bankruptcy theory because, said the trustee, second priority distributions by trustees should not be considered wage distributions by *employers*, the latter being the only basis upon which income withholding and social security taxes may be determined under the Internal Revenue Code. The same argument is raised on this appeal.

We are persuaded by the reasoning of the Eighth Circuit in *Fogarty*, that for purposes of the bankruptcy proceeding and the attachment of the contested tax claim, the Trustee can stand in the shoes of the bankrupt employer and distributions under Section 64, sub. a(2) may be considered wage payments.

10. State of Missouri v. Gleick, 135 F.2d 134 (8 Cir. 1943) (trustee liable, as an expense of administration, for state unemployment taxes accruing from his hiring of labor *after* his appointment); United States v. Killoren, 119 F.2d 364 (8 Cir. 1941) (trustee liable, as cost and expense of administration, for social security taxes which accrued to the bankrupt *after* the filing of his bankruptcy petition, but prior to his adjudication as a bankrupt, *while he continued to operate* his business in a Chapter X reorganization); *In re* Lambertville Rubber Co., 111 F.2d 45 (3 Cir. 1940) (trustee liable to surcharge for failure to pro rate social security and unemployment taxes, which accrued from labor costs during a post-bankruptcy § 77B reorganization, with other first priority claims); People of State of Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136 (1932) (receiver liable for corporate franchise taxes incurred while he was *operating* the bankrupt's business); Boteler v. Ingels, 308 U.S. 57, 60 S. Ct. 29, 84 L.Ed. 78 (1939) (trustee liable for taxes accrued *post-filing* while he *operated* the bankrupt's business in a liquidation proceeding).

11. 6 Remington on Bankruptcy § 2818, at 398 (Henderson ed. 1952).

ing the bankrupt's assets as a basis for a first priority tax claim have implied that any activity, short of a purpose on the part of the bankrupt, trustee, or receiver to develop or maintain assets for the maximum benefit of creditors, would not be a basis for a tax claim entitled to first priority status.

This court, in upholding New Jersey's claim for franchise taxes accruing during a bankruptcy reorganization, stated:

> " * * * the order appointing the trustees specifically referred to the 'franchises' of the corporation and required the trustees to protect and conserve this asset as well as other assets transferred to them. * * *
>
> * * * * * *
>
> " * * * [The franchise tax] *thereby* became one of the expenses of administration incurred by the trustee." [12]

*United States v. Fogarty* has, in reality, stood on precedent which has recognized a cleavage between allowing as first priority matters, taxes arising from post-bankruptcy activities geared towards development or preservation of the bankrupt's assets, but disallowing as an expense of administration, taxes attaching to post-bankruptcy activities incidental to the development or preservation of the bankrupt's assets. This is the measure both by which *Fogarty* becomes of little value to this court and makes necessary an independent analysis of the rationale of the *Fogarty* rule.

## II

Most post-bankruptcy taxes have been placed into the category of costs and expenses of administration, and as such,

these taxes have been entitled to first priority status. This position is the natural consequence of the broad principle that "the cost of protecting a fund in court is everywhere recognized as a dominant charge on that fund." [13] Section 64, sub. a(1) of the Bankruptcy Act also recognizes that costs associated with the distribution of the fund are expenses of administration.

> " * * * If the tax [on wages accruing prior to bankruptcy but allotted in bankruptcy] were on the distribution of the wage claim, the tax could be a valid expense of administration since distribution is a part of administration; but the tax in question is not a tax on distribution but a tax on wages paid." [14]

Thus, as the tax on such wages as is before us neither has a relationship to the cost of protecting or developing the bankrupt's assets, nor can be reasonably considered a tax on the mere distribution of the wages, Section 64, sub. a(1) of the Bankruptcy Act is distorted by attempting to create a fiction as was done in *United States v. Fogarty*.

The Government's argument amounts to a bland assertion that all post-bankruptcy expenses, including taxes, are by definition first priority costs and expenses of administration.[15] There has been an unwillingness to recognize that Section 64, sub. a(1) does have built-in limitations. A few courts, however, have been aware of this problem and the considerations to be weighed in classifying an expense as a Section 64, sub. a (1) first priority matter.

*In re Mt. Washington S.S. Co., Inc.*[16] involved the levy of a use tax on an uncompleted sailing vessel four days

12. *In re* Pressed Steel Car Co. of New Jersey, 100 F.2d 147, 152 (3 Cir. 1938). (Emphasis added.)

13. Adair v. Bank of America Assn., 303 U.S. 350, 361, 58 S.Ct. 594, 600, 82 L.Ed. 889 (1938). See Wurzel, *supra* note 6, at 1174.

14. 56 Mich.L.Rev. 631, 632 (1958).

15. The question of whether we are in fact dealing with a post-bankruptcy tax will

be dealt with subsequently in this opinion. The point to be made at this time is that all post-bankruptcy expenses are not necessarily costs and expenses of administration. As this case is limited to the question of taxes, other non-first priority post-bankruptcy expenses will not be explored herein.

16. 43 F.Supp. 176 (D.N.H. 1942).

after the filing of the bankruptcy petition. The bankrupt's assets were insufficient to reach fourth priority creditors. The city, therefore, argued that as the tax accrued after the filing of the bankruptcy petition, a post-bankruptcy expense entitled to first priority status arose. The federal district court held that because the trustee neither operated the boat nor was ever apparently authorized to operate the boat, the tax assessed could not be considered a current expense of administration.[17]

In *Denton & Anderson Co. v. Induction Heating Corp.*,[18] a creditor-agent of the bankrupt secured orders for the bankrupt's goods prior to filing of the bankruptcy petition. The bankrupt accepted the orders, but had not filled them prior to the filing. After the filing, the bankrupt was allowed to remain in possession and operate his business, at which time the orders were filled and the creditor-agent's commissions arose upon the bankrupt's being paid for the orders. The creditor claimed that because his commissions were post-bankruptcy expenses, they were entitled to first priority status as an expense of administration. The United States Court of Appeals for the Second Circuit refused to expand "costs and expenses of administration" to encompass such an item which merely was a post-bankruptcy expense separate and distinct from development or preservation of the bankrupt's estate, and an expense which could not be placed in the category of costs incurred because of the bankruptcy distribution.[19]

In both the aforementioned cases the tax or expense was post-bankruptcy and the trustee or bankrupt was either in possession of the item taxed or operating the business from which operation the expense arose. *In re Mt. Washington S.S. Co., Inc.,* involved a matter entirely arising after the filing of the petition. *Denton & Anderson Co. v. Induction Heating Corp.* was a hybrid situation, such as the one before us now. Yet, in both circumstances the courts went beyond the mere fact of the tax or expense arising after the initiation of the bankruptcy to analyze whether such tax or expense could be reasonably considered to be a first priority cost or expense of administration. Approaching the problem in a like manner, we find the rubric "costs and expenses of administration" to be distorted essentially when withholding and social security taxes based on labors terminated prior to bankruptcy are forced into a Section 64, sub. a(1) priority position.

Our view of the boundaries of Section 64, sub. a(1) of the Bankruptcy Act is reinforced by the latest amendment to that Section in 1962. Prior to the 1962 amendment, Section 64, sub. a(1) set forth a number of individual first priority expense items under no explicit generic label. "Costs and expenses of administration" was one of a number of particular items enumerated in Section 64, sub. a(1).[20] In such a

---

17. The court further indicated that because the bankrupt's assets were limited and insufficient to satisfy fourth priorities, the question of such tax fitting into that level of priority was purely academic and not worthy of discussion.

18. 178 F.2d 841 (2 Cir. 1949).

19. Judge Frank stated:
"* * * appellant [creditor] could at once—under Bankruptcy Act Sections 57, sub. d and 63, sub. a(8)—have filed a claim either (1) as an unliquidated claim or (2) as a contingent claim. * * * [T]he only possible questions were (a) whether the amount of the claim could be determined, and if so, (b) what the amount was. * * *"
*Id.* at 843. Subsequent discussion will indicate that the questions as to the possible determination of the amount of the claim and its establishment in this case are substantially similar to those which have been faced by the Second Circuit. See text, pp. 17–18.

20. Bankruptcy Act, § 64, sub. a(1), 11 U.S.C. § 104, sub. a(1) (1958):
"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the actual and necessary costs and expenses of preserv-

posture, the Section did lend itself to a broad construction. The amendment altered the language of the Section to read as follows:

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) *the costs and expenses of administration, including* the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; * * *."[21]

The impact of the amendment was to clarify the fact that Congress had considered all expenses laid out in Section 64, sub. a(1) costs and expenses of administration. The legislative history makes it clear that Congress, through the amendment, wanted to underline this factor. The Senate Report [22] accompanying the amending legislation stated:

"Section 6

"(a) The first priority under section 64a is frequently referred to as the 'administration expense priority.' All of the items set forth in section 64a(1) are properly regarded as 'costs and expenses of administration.' Even as clause (1) read in the Chandler Act amendment of section 64, however, the quoted expression did not appear in the language of the clause until three separate items were mentioned.

\* \* \* \* \* \*

"The transposition of the words,

'the costs and expenses of administration, including,' to the beginning of section 64a(1), as proposed in the suggested amendment, will make clear the intended result."

Though those enumerated costs and expenses of administration were never meant to be all inclusive, the 1962 amendment does indicate a concern that a meaningful view be had as to what is to be considered a cost and expense of administration. By explicitly structuring Section 64, sub. a(1) the Congress indicated both that all items in Section 64, sub. a(1) were costs and expenses of administration, and that the expression "costs and expenses of administration" was not a catchall within the first priority. With such a Congressional intent apparent, it is preferable to isolate from Section 64, sub. a(1), as falling without a meaningful view of costs and expenses of administration, those expenses which, though they can be considered post-bankruptcy items, are unrelated to development, preservation or distribution of the bankrupt's assets.

## III

The relationship between Sections 64, sub. a(1) and 64, sub. a(4) of the Bankruptcy Act is both one which is enlightening and one which goes to the heart of the very problem before us.

The Bankruptcy Act, as it was originally passed, classified the priorities quite differently than they are now ordered. "Taxes legally due and owing" were given first priority status above

ing the estate subsequent to filing the petition; the fees for the referees' salary fund and for the referees' expense fund; the filing fees paid by creditors in involuntary cases or by persons other than the bankrupts in voluntary cases; where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the bankrupt by the efforts and expense of one or more creditors, the reasonable costs and expenses of such recovery; *the costs and expenses of administration, including* the trustee's expenses in op-

posing the bankrupt's discharge or in connection with the criminal prosecution of an offense punishable under chapter 9 of Title 18, or an offense concerning the business or property of the bankrupt punishable under other laws, Federal or State; * * *." (Emphasis added.)

21. Bankruptcy Act, § 64, sub. a (1), 11 U.S.C. § 104, sub. a (1) (Supp. V. 1964). (Emphasis added.)

22. Senate Report No. 1954, accompanying the amending legislation, H.R. 5393, August 28, 1962, U.S.Code Congressional and Administrative News p. 2603 (1962).

all else.[23] But when the impact of increased taxation began to be felt, the Congress reviewed its approach towards tax claims and reordered its priorities. In 1926,[24] "taxes legally due and owing" were relegated to fourth priority status. The 1938 Chandler Act amendments to the Bankruptcy Act[25] further reduced the preferred status of tax claims by requiring their proof by government within a statutory time limit.

The concerted legislative effort to reduce the significance of tax claims relative to other priorities was bound to have an effect on bankruptcy law. Even assuming that post-bankruptcy taxes were originally included within Section 64, sub. a(1) as pre-bankruptcy tax claims clearly were, the changes in the law which certainly extracted pre-bankruptcy tax claims from Section 64, sub. a(1) challenged the continued validity of all post-bankruptcy taxes remaining in that Section.[26] The amendments changing the status of tax claims have had their effect in other ways. The changes have, for instance, resulted in the rejection of any and all post-bankruptcy interest on tax claims.[27] When determining, therefore, whether taxes on wages accrued prior to bankruptcy, but distributed after bankruptcy, are entitled to first priority status as costs and expenses of administration, courts must be aware of this legislative disposition to remove taxes from a preferred status. The question of the extent to which such removal was intended still remains, but the mere existence of these legislative developments indicates that the answer is not merely definitional as has been suggested by the Government and as was likely argued and accepted in *Fogarty*. In the light of such legislative developments this court cannot accept the view if, indeed, it is the Government's position, that *by definition* all post-bankruptcy tax expenses are entitled to first priority status as costs and expenses of administration.

With this understanding in mind, what is the relationship and the line of demarcation between Section 64, sub. a(1) and Section 64, sub. a(4) tax matters? The Government is willing to concede that any claim it might have, for withholding and social security taxes based on wages paid prior to the filing in bankruptcy, is merely entitled to Section 64, sub. a(4) status. It reasons that payment of wages prior to filing establishes a figure "legally due and owing by the bankrupt," a figure certain in amount. Thus, the language of Section 64, sub. a(4) clearly governs in such circumstances. It is further argued by the Government that when wages are not paid until after a bankruptcy proceeding arises, such taxes cannot be "legally due and owing by the bankrupt" at the time of filing, for under the Internal Revenue Code the tax only attaches at the time the wage payment is made.[28] And until such payment is made, the amount due cannot be definitively ascertained. Thus, says the Government, such a tax as is here before us cannot fit into Section 64, sub. a(4) as a tax "legally due and owing by the bankrupt," and, therefore, must be a post-bankruptcy Section 64, sub. a(1) cost and expense of administration. The

23. 30 Stat. 563 (1898).

24. 44 Stat. 666 (1926).

25. 11 U.S.C. § 93, sub. n (1958).

26. See Wurzel, *supra* note 6, at 1147.

27. As was explained by the United States Court of Appeals for the Fourth Circuit: "Before 1949, the question of post-bankruptcy interest on tax claims was unsettled. In that year, however, the Supreme Court, in City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, held that because the amendment to the Bankruptcy Act of 1926, and later the Chandler Act, deprived taxes of their preferred status, there was no exception to the rule against post-bankruptcy interest for tax claims."
United States v. Harrington, 269 F.2d 719, 721 (4 Cir. 1959).

28. Treas.Reg. §§ 31.3101–3, 31.3111–3 (1954).

Government's position falls on several grounds.

The Government makes the initial assumption that taxes must attach prior to the filing of the petition in bankruptcy before they may be considered as falling into Section 64, sub. a(4). As has been indicated above, the original structure of the Bankruptcy Act established taxes as a debt having first priority status. An early construction of the term "legally due and owing," when taxes remained first priority matters, had declared such term to be unrelated to the time of the filing of the bankruptcy petition. Thus, when property taxes were assessed after the filing of the bankruptcy petition, the United States District Court for the District of New Jersey held that "legally due and owing by the bankrupt" was meant to be inclusive of taxes due and owing after the filing of the bankruptcy petition. The District Court stated:

" * * * It is true that section 64 does not, in express words, refer to taxes assessed or becoming due after the institution of bankruptcy proceedings. But it is settled law that the bankrupt's estate is taxable while it is in the hands of the bankrupt's trustees." [29]

The basis for such a ruling was the trustee's position as standing in the shoes of the bankrupt regardless of the time of filing. While we venture no opinion as to whether or not such property taxes would today be considered an expense of administration, viewing the trustee as standing in the shoes of the bankrupt may provide an alternative when the post-bankruptcy tax attaching is clearly not a cost and expense of administration. Certainly, the Government's view that no post-bankruptcy matters can fit into Section 64, sub. a(4) is, at the very least, questionable.

Secondly, the Government's reliance on the following phraseology of Section 3102 of the Internal Revenue Code is faulty:

"Sec. 3102. Deduction of tax from wages

"(a) Requirement.—

"The tax imposed by section 3101 [social security] shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages *as and when paid.*" (Emphasis added.)

Since the "procedure for assessing and collecting taxes varies so widely among the numerous taxing jurisdictions of the United States, no general technique for determining when a tax is due and owing has been evolved." [30] These jurisdictional discrepancies should not be allowed to create an inconsistent quilt of bankruptcy law barring its rational development. It is well settled that the term "legally due and owing" does not mean "payable." [31] And "[i]t does not follow that taxes are not due and owing from the citizen * * * because the state has prescribed some method exclusive in its character for their collection." [32]

The problem arising from such a limited construction as the Government now offers was foreseen in one of the leading cases subsequent to *Fogarty* and cited previously, *In re John Horne Co.*[33] That case involved Section 976 of the California Unemployment Insurance Code which specified that the tax would "accrue and become payable by every employer for each calendar year with respect to wages paid for employment." However, at the initial hearing of the case the court stated that Section 976 would be considered as applying only

29. *In re* William F. Fisher & Co., 148 F. 907, 912 (D.N.J.1906).

30. 3 Collier on Bankruptcy § 64.405, at 2159 (14th ed. 1961).

31. See, *e.g., In re* Flynn, 134 F. 145 (D. Mass.1905) (property tax assessed prior to filing of the bankruptcy petition, though not payable until after the adjudication of the bankrupt, was "legally due and owing" at the time of the filing).

32. Hecox v. Teller County, 198 F. 634, 635 (8 Cir. 1912).

33. *Supra* note 8.

to the normal operation of a going business and not to the situation in bankruptcy.[34]

Absurd results for bankruptcy, as might have arisen in *In re John Horne*, can be foreseen, if the courts must be strictly limited in their interpretation of sections of the Bankruptcy Act by terminology used in statutes operating incidental to that Bankruptcy Act. The first adverse reaction has already been noted. In an attempt to protect the Government's tax claim in cases such as this and *Fogarty*, the courts have been asked to distort Section 64, sub. a(1) of the Bankruptcy Act. But, even more important, other priorities and general creditors could receive a windfall, if guided by the Government's approach.[35] Assume for the moment a relatively swift bankruptcy liquidation. The bankrupt has paid wages prior to filing, has withheld income taxes from his employees' salaries, but has not turned such tax revenue over to the Government. Such a tax claim by the Government is clearly entitled to Section 64, sub. a(4) treatment. However, the tax on income is not due until the taxable year terminates.[36] If complete liquidation is accomplished before that taxable year terminates, or if the Government cannot file its proof of claim within the statutory period because the taxable year has not terminated and the tax has not become due and owing under the Internal Revenue Code, a windfall to other creditors will come about. Such is the result of the Government's logic that the Bankruptcy Act's provisions are strictly limited by definitions relative to, and included within, statutes functioning incidental to that Bankruptcy Act. Therefore, we refuse to be limited by the position that, if the Internal Revenue Code will not allow an income tax to attach until actual payment of the wages on which that tax is based, for purposes of bankruptcy that tax will not be "legally due and owing" at the time of the filing of the bankruptcy petition, and therefore, not a fourth priority item. On the contrary, for purposes of bankruptcy, if certain prerequisite conditions exist, such a tax can attach prior to filing and fall within Section 64, sub. a(4) of the Act.

A third concern with the Government's position is that it fails to recognize the conditions that do exist here which allow the income withholding and social security taxes to attach as fourth priority items. The Government's contention that taxes are not certain in amount, and on this ground cannot be "legally due and owing" at the time of filing, if their basis, the wages, are paid after filing, is not meritorious. A maximum wage due would certainly be discernible from the bankrupt's records. Thus, a maximum tax due, albeit *in futuro*, could also be established. This amount is as certain as the tax which falls into the fourth priority when wage claims are paid prior to filing. Unexpected post-

34. 56 Mich.L.Rev. 631, 633–34 n. 26 (1958).

35. A distortion of the order of priorities also results, as can be witnessed in Lines v. State of California, Dept. of Employ., 242 F.2d 201 (9 Cir.), rehearing denied, 246 F.2d 70 (9 Cir.), cert. denied, 355 U.S. 857, 78 S.Ct. 86, 2 L.Ed.2d 64 (1957). The policy of the Bankruptcy Act is to give wage claims priority over tax claims. The policies of both the Bankruptcy Act and the Social Security and unemployment acts are far from realized when the result is as it was in *Lines*. There dividends which otherwise would have gone to second priority wage earners were depleted by a first priority employer's tax payment to the unemployment insurance fund. See 56 Mich.L. Rev. 631, 633 (1958). See note 4 *supra* and accompanying text.

It might be said that a *Lines* type situation arises when wage dividends to be paid to general creditors are depleted by fourth priority tax distributions for employers' excises. Such is not the case. Wage dividends paid to general creditors were never given priority status over tax claims. Thus, an accommodation made for such fourth priority claims, though resulting in a reduction in that which may be allotted as wages to workers in the general creditor status, does not do violence to the order of priorities of the Bankruptcy Act.

36. 3 Collier on Bankruptcy § 64.405, at 2162 (14th ed. 1961).

filing expenses can certainly reduce that fourth priority distribution. Thus, the mere fact that wages had only accrued, but had not been paid until bankruptcy, in no way heightens the uncertainty which the Government claims will arise if wages have not been paid at the time, for bankruptcy purposes, the tax becomes "legally due and owing." The mere fact of payment after the filing does not, for bankruptcy purposes, lessen the ability of the Government to file a proof of claim. Because a maximum figure is ascertainable, though subject to reduction, an adequate proof of claim can be filed. To this extent the practical reality of the circumstances of this and other bankruptcies guides our present construction of Section 64, sub. a(4).

Inherent in the Government's position is a fourth basis, for argument which we also reject. The Government contends that the phrase "legally due and owing *by the bankrupt*" indicates that only pre-bankruptcy tax matters were contemplated as falling within Section 64, sub. a(4), because the payment of wages by trustees, as a second priority matter or to general creditors, would result in a tax owing by the Trustee rather than the Bankrupt. But in asserting this position the Government overlooks the fact that to establish its right to the contested taxes it most persuasively argued that, for purposes of the Internal Revenue Code, the Trustee stands in the position of the Bankrupt. Thus, the wage payment by the Trustee fell within the provisions of the Code and was a valid claim by the Government. The whole basis for the equation of employer with trustee is that the employer, in a case in which he was not involved in a bankruptcy proceeding, would have had to pay the wages as employer, under the Internal Revenue Code, even if he were no longer, in actuality, employer. And he would, at the time of payment, have had to pay the accrued taxes, despite his no longer being employer. Thus, based on this reasoning, if the Trustee can be Bankrupt-employer for the purpose of wage payments, it is difficult to see why he may not be Bankrupt-employer, rather than Trustee, for the payment of the taxes on those wage distributions. We find that he may consistently be considered in that light, and that his liability to the Government for Section 64, sub. a (4) taxes "legally due and owing" is a liability for taxes "owing by the bankrupt." [37]

In retrospect then, we find that both the history of the development of the Section 64, sub. a(4) priority and the practical mechanics of the Bankruptcy statute, were meant to effectuate a movement of tax claims, clearly not costs and expenses of administration, to a fourth priority status.

37. The fact that the bulk of the claim for income withholding and social security taxes falls on the employees rather than the employers raises an initial problem. The phrase "taxes legally due and owing *by the bankrupt*" could be construed literally to exclude taxes "*owing by the employees.*" There is ample precedent, however, refusing to construe so literally such language. See United States v. State of New York, 315 U.S. 510, 62 S. Ct. 712, 86 L.Ed. 998 (1942); City of New York v. Feiring, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941). As has been pointedly stated:

"* * * [T]he fact that for other purposes * * * the tax is determined as falling primarily on the [employee] does not necessarily impugn the result that for purposes of priority in the [employer's] bankruptcy, the sovereign is entitled to priority under § 64(a) (4). * * * The mere fact that the sovereign interposes a tax claim in the bankruptcy of a person liable for collection, demonstrates that as a practical matter he is usually the only person to whom the sovereign may look for payment. * * * Where a tax is imposed and an individual or a corporation is made the agent to collect the tax, with an absolute liability to pay such tax to the sovereign whether collected or not, such obligation has all the characteristics of a tax for the purposes of giving the sovereign its rightful priority in the bankruptcy of the collector of the tax."

3 Collier on Bankruptcy § 64.405, at 2172–73 (14th ed. 1961).

## IV

As has been indicated previously, the filing of a proof of claim is statutorily required in fourth priority matters. Such a proof of claim was not filed in this case. As has also been submitted above, the filing of such proof of claim should be no more difficult in a case where wages have not been paid prior to the filing of the bankruptcy petition than in circumstances where wages have been paid prior to filing.

The argument has been raised in the court below that to let the general creditors get the windfall from funds withheld from the distribution to wage claimants for taxes, when no proof of claim for these taxes is filed, is incongruous indeed. On the contrary, to be confronted with such an occurrence is one of the structural strengths of the Bankruptcy Act. The demand for proof of claim was intended for the benefit of general creditors. No longer can most priority claims receive a slice of the bankrupt's assets without proof of claim forthcoming. The Government is placed in no superior position here. Its inability or failure to file such proof of claim naturally results in a distribution of assets elsewhere. Such a result should not be surprising. It is commonplace.

Here, when the employee's tax is withheld, his liability to the Government is discharged. He is not liable for a double tax.[38] The potential situation raising the question of the bankrupt's liability for such taxes after liquidation, when the Government has not filed a proof of claim during bankruptcy, is beyond the purview of this opinion.

One other argument should be treated. The Government relies on a trust fund theory for isolation and payment by the Trustee of the employee and employer taxes involved herein, and by such an approach to avoid the necessity for a proof of claim. Its contention is defeated, however, by the very language of Section 7501 of the Internal Revenue Code of 1954:

"§ 7501. Liability for taxes withheld or collected

"(a) General rule.—

"Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

Thus, though such collections are considered by law to be held in trust, that trust is subject to the same limitations

---

38. Internal Revenue Code of 1954, § 31 (a) (1):
"§ 31. Tax withheld on wages
"(a) Wage withholding for income tax purposes.—
"(1) In general.—The amount of tax withheld under section 3402 as tax on the wages of any individual shall be allowed to the recipient of the income as a credit against the tax imposed by this subtitle."
Internal Revenue Code of 1954, § 3402 (a) (d):
"§ 3402. Income tax collected at source
"(a) Requirement of withholding.—Every employer making payment of wages shall deduct and withhold upon such wages a tax equal to 18 percent of the amount by which the wages ex-

ceed the number of withholding exemptions claimed, multiplied by the amount of one such exemption as shown in subsection (b) (1).

\* \* \* \* \*

"(d) Tax paid by recipient.—If the employer, in violation of the provisions of this chapter, fails to deduct and withhold the tax under this chapter, and thereafter the tax against which such tax may be credited is paid, the tax so required to be deducted and withheld shall not be collected from the employer; but this subsection shall in no case relieve the employer from liability for any penalties or additions to the tax otherwise applicable in respect of such failure to deduct and withhold."

as are the taxes from which the trust arose. Here, that limitation is the structure of the Bankruptcy Act, the fact that such trust fund can only be collected in the instant case as a fourth priority matter.

V

In sum, it should be noted again that such an extensive consideration of the problem at hand and all its ramifications would have been unnecessary, if the Bankruptcy Act, itself, were more explicit in its commands. But dealing with the problem, as we have done, in this partial vacuum, we have been moved by (1) precedent which stands as a dilution of, rather than support for, the *Fogarty* rule; by (2) the essential distortion of Section 64, sub. a(1) costs and expenses of administration when a tax unrelated to development, preservation or distribution of the bankrupt's assets is placed into the first priority; and by (3) the historical development of "taxes legally due and owing by the bankrupt" from a matter of first to a matter of fourth priority that has created Section 64, sub. a(4) as a statutory provision which, when faced with including as a fourth priority matter, income withholding and social security taxes arising from wages accruing prior to bankruptcy, but paid during bankruptcy, functions well mechanically and comports with the spirit of the Bankruptcy Act.

We hold, therefore, that such taxes based on wage claims accruing prior to bankruptcy, but paid during bankruptcy, are not Section 64, sub. a (1) "costs and expenses of administration," but are Section 64, sub. a(4) "taxes legally due and owing by the bankrupt." Therefore the District Court will be affirmed only insofar as the Trustee herein is directed to withhold from allowed priority and non-priority wage claims federal income withholding and social security taxes, but is reversed insofar as it directs the Trustee to pay such taxes to the United States, the Government having failed to file its proof of claim therefor. Thus, the case is remanded for the reinstatement of the Referee's order for distribution of October 26, 1962 authorizing the payment of the wage claims, but that order is modified to the extent that the income withholding and social security taxes deductible from the said wages shall be distributed in payment of other priorities and general creditors.