In the Matter of **JONKER CORPORATION.**

In Bankruptcy No. M–13856.

United States District Court, D. Maryland.

Nov. 7, 1974.

As Modified Nov. 25, 1974.

George Beall, U. S. Atty., and Leonard M. Linton, Jr., Asst. U. S. Atty., Baltimore, Md., for United States.

Mitchell Stevan, Baltimore, Md., for S. David Rubenstein, Trustee.

## OPINION AND ORDER

JAMES R. MILLER, Jr., District Judge.

This appeal by the Internal Revenue Service (IRS) of the United States from an order of the Referee in Bankruptcy arises from the adjudication of Jonker

Corporation as a bankrupt. Following the adjudication of bankruptcy, the United States filed three proofs of claim. The first claim, filed March 6, 1970, and amended April 6, 1970, was a timely filed proof of claim for Internal Revenue taxes in the amount of $79,028.84. (Claim No. 122a). On March 8, 1971, the Department of Health, Education & Welfare (HEW) filed a second claim in the amount of $186.00 for overpayment on a lease of a machine from the bankrupt. On the same day, the Defense Supply Agency. (DSA) filed the third claim in the amount of $3,042.00 for overpayment on a contract. The second and third claims of HEW and DSA were admittedly untimely filed.

Since the second and third claims of the United States were not timely filed, the Referee issued orders on March 8, 1971 (Papers Nos. 71 and 72) allowing the claims of HEW and DSA only as against the surplus, if any, remaining after payment in full to general creditors. The United States did not file a petition for review of the Referee's orders of March 8, 1971. In May, 1973, the Referee prepared an order of distribution, allowing pro rata distribution to priority creditors under 11 U.S.C. § 104(a)(4) at 86.749%. There was, therefore, no surplus in the bankruptcy estate against which the Referee-allotted distribution to HEW or DSA could be satisfied.

Prior to bankruptcy, Jonker Corporation (Jonker) had been performing a contract with the Department of the Army.

After the adjudication of bankruptcy, it was determined that the Army held the sum of $34,494.93 as properly owing to the bankrupt under its contract. The Comptroller General ordered that the sum held by the Army should be distributed to the various federal agencies having claims against the bankrupt in the following order of priority: $186.00 to HEW, $3,042.00 to DSA, and the remaining balance of $31,266.93 to IRS. Those federal agencies received the money in accordance with the Comptroller General's instructions.

The Referee in Bankruptcy, however, determined that he was not bound by the distribution directed by the Comptroller General. On May 10, 1973 (Paper No. 96), the Referee passed an order holding that the sum of $34,494.93 owed by the Army to the bankrupt should be set off in its entirety against the tax claim only. Based on his aforementioned orders of March 8, 1971, the Referee concluded that the money should not be used to satisfy the untimely claims of HEW and DSA. The United States appeals from that action of the Referee.[1]

A. *The 10-day period for review of the Referee's orders*

Under 11 U.S.C. § 67(c)[2] a 10-day period of limitations is established which is designed to fix a time for the finality of litigation over respective orders of a Referee. Hardesty v. Keightley, 361 F. 2d 751 (4th Cir. 1966). The IRS petition for review purports to challenge the

---

1. Effective October 1, 1973, and pursuant to 28 U.S.C. § 2075, the Supreme Court promulgated new Bankruptcy Rules and Official Bankruptcy Forms. The new rules are intended to govern practice and procedure under the Bankruptcy Act. The new rules to the extent they are inconsistent with Title 11, U.S.C., or with prior practice and procedure, shall be applicable to pending proceedings, unless, in the opinion of the court, their application is not feasible or works an injustice. 411 U.S. 991, Rules of Bankruptcy Procedure, Advisory Committee Introductory Notes. Since the new bankruptcy rules either do not encompass statutory sections relevant to this appeal or while addressing the subject matter do not substantively change the same, this

appeal will be decided in accordance with the law in effect prior to the adoption of the new rules.

2. 11 U.S.C. § 67(c) is now embodied in Rules 802 and 803 of the new Bankruptcy Rules. 11 U.S.C. § 67(c) provides in pertinent part:
"(c) A person aggrieved by an order of a referee may, within ten days after the entry thereof . . . file with the referee a petition for review of such order by a judge . . . . Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final."

May 10, 1973, order of the Referee and was timely filed on May 21, 1973.[3]

The Referee's order of May 10, 1973 (Paper No. 96), stated in part as follows:

> "The court concludes that it is not bound by the distribution made by the General Accounting Office particularly *in view of the prior proceedings herein and the orders of this court passed March 8, 1971* allowing the claims of the Department of Health, Education and Welfare and the United States Defense Supply Agency only against any surplus remaining after all claims timely filed herein have been paid in full." (Emphasis supplied).

No petition for review of the orders of March 8, 1971, had been filed up to that time, May 10, 1973, nor had the IRS or any other branch of the United States Government filed a petition for reconsideration by the Referee of those orders. The orders of March 8, 1971, had become final, 11 U.S.C. § 67(c). The Referee, in his order of May 10, 1973, without reconsidering, or being called upon to reconsider, his orders of March 8, 1971, simply accepted those orders as final and decided the question then pending before him by making the next logical step from the then established premise that the HEW and DSA claims were to be allowed only against any surplus remaining after all claims timely filed had been paid in full.

■ The IRS cannot, by appealing the validity of the May 10, 1973 order, reopen the validity of the March 8, 1971 orders for to do so would circumvent 11 U.S.C. § 67(c) and render it a nullity.

This court's conclusion is not inconsistent with the result in In re Penco Corporation, 465 F.2d 693 (4th Cir. 1972). There the Referee had issued a turnover order on June 28, 1971, against Carmen Cosmetics as to which a petition for review had not been thereafter filed. On July 26, 1971, however, Carmen Cosmetics filed a motion with the Referee to set aside the order of June 28, 1971. The Referee entertained the motion, reopened, and reconsidered the matters decided in his order of June 28, 1971, ultimately decided that he had been correct initially, and denied the motion on August 23, 1971. Carmen Cosmetics then filed a petition for review by the District Court on September 1, 1971. The Fourth Circuit, in reversing the lower court which had held that the petition for review was untimely filed and really sought review of the order of June 28, 1971, held that " . . . the Referee definalized the turnover order [of June 28, 1971] by putting 'the basis of that earlier order again in issue' . . . " and that " . . . the ten-day period for seeking review of that order must be measured from August 23, the date of the Referee's refinalization of the original turnover order." 465 F.2d at 696.

The great difference between the situations in *Penco* and here is that in *Penco* the Referee reconsidered his prior order, thereby definalizing it, whereas here the Referee accepted his prior order as final without reconsideration and proceeded to make a related decision based upon his prior final order.

While this court holds that 11 U.S.C. § 67(c), under these circumstances, precludes the review in this proceeding of the validity of the orders of March 8, 1971, even if the court were to consider those orders on the merits, the orders would be held to be valid, 11 U.S.C. § 93(n); Wolverton v. Shell Oil Co., 442 F.2d 666 (9th Cir. 1971); Perry v. Certificate Holders of Thrift Savings, 320 F.2d 584 (9th Cir. 1963); 3 Collier's on Bankruptcy (14th ed.) ¶¶ 57.01 at 121, 57.10 at 189, 57.26 at 413, 57.27[2] at 424, and 57.30 at 434.

### B. *Set-Offs*

■ The IRS argues that irrespective of the orders of March 8, 1971, 11 U.S.C. § 108 requires the set-off of mutual claims existing between the bankrupt

---

3. The 10th day, May 20, 1973, fell on a Sunday and, therefore, May 21, 1973, was the last day for filing. Rule 6(a) F.R.Civ.P.

estate and its debtor-creditor. That statute provides:

"108. Set-offs and counterclaims. —(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"(b) A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 57 of this Act [§ 93(g) of this title]; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy."

While § 108 is couched in mandatory language, it has long been rcognized that the privilege of set-off under § 108 is permissive, not mandatory. It is applied by courts of bankruptcy in the exercise of discretion, consistent with the general principles of equity and justice. Cumberland Glass Mfg. Co. v. DeWitt, 237 U.S. 447, 455, 35 S.Ct. 636, 59 L.Ed. 1042 (1915); Brunswick Corporation v. Clements, 424 F.2d 673 (6th Cir. 1970), cert. denied, 400 U.S. 1013, 91 S.Ct. 564, 27 L.Ed.2d 627 (1971); Tuscon House Construction Company v. Fulford, 378 F.2d 734 (9th Cir. 1967); The First National Bank of Portland v. Dudley, 231 F.2d 396 (9th Cir. 1956); In re Potts, 142 F.2d 883 (6th Cir. 1944), cert. denied, 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945).

The government argues that the clear statutory language of § 108 does not require that claims entitled to set-off actually be proven. Instead, the government asserts that the provision requires only that such claims be "provable." While HEW and DSA did not prove their untimely filed claims, such claims, the government argues, satisfied the requirement of provability within the meaning of 11 U.S.C. § 108(b). Thus the claims of HEW and DSA were entitled to the sums allocated to them as a set-off by the Comptroller General.

In support of its argument, the government relies on only two cases, and this court could find no others. In Zorwitz v. Okin, 121 F.Supp. 56 (E.D.N.Y. 1954), the court held that a claim which was not filed in time for proof and allowance may still be used as a set-off. In United States v. Columbia Erection Corp., 134 F.Supp. 305 (W.D.Mo.1955), the court stated that a party may plead in set-off even where the time for filing a claim against the bankrupt has expired. In neither *Zorwitz* nor *Columbia*, however, was an order entered by the Referee allowing untimely filed claims against surplus only.

Failure to file and prove a provable claim within the time limitation of 11 U.S.C. § 93(n)[4] may preclude the allowance of such claim. 1 Collier's on Bankruptcy (14th ed.) ¶ 1.14 at 89. Although such claim may not be allowed, it nevertheless retains its character as a provable claim. Since it is provable in nature, the claim falls within the set-off provisions of § 108(b) and thus may be used as a set-off. 1 Collier's on Bankruptcy ¶ 1.14 at 89; 4 Collier's on Bankruptcy ¶ 68.08 at 892–893.

In essence, what the government seems to argue here is that " . . . a barred claim may be set up defensively in offset against a suit, even though the barred claim could not be permitted to constitute the basis of an affirmative action." United States v. Columbia Erection Corp., *supra*, at 306. Where the claimant has not satisfied the time requirements of 11 U.S.C. § 93(n), the claimant can recover affirmatively only against surplus. But where a claim is untimely filed and the debtor-creditor has funds of the bankrupt in his possession, the government contends that the debtor-creditor can use those funds as an offset. Since such action does not

---

4. Now Rule 302 in new Bankruptcy Rules.

constitute affirmative recovery against the estate, the set-off is proper so the argument goes.

There is, no doubt, a distinction to be made between allowing a tardy creditor to recover affirmatively against the bankrupt estate, and allowing a tardy creditor in possession of the bankrupt's funds to keep those funds as a set-off for his claim. In permitting the funds to be used as a set-off for DSA and HEW first, the Comptroller General has allowed those agencies to obtain payment when they otherwise could not obtain affirmative recovery from the bankrupt estate. In so doing, the amount of the fund available to satisfy the IRS claim was thereby reduced. Since IRS is entitled to recover its tax money as a priority under 11 U.S.C. § 104(a)(4), the extent of IRS's affirmative recovery against the bankrupt estate is necessarily increased. In effect, then, the action of the Comptroller General reduces the size of the estate available for those creditors whose claims were timely filed.

In the case of In re Brewster-Raymond Corp., 344 F.2d 903 (6th Cir. 1965), the bankrupt had been engaged in the performance of a contract for the United States Navy, and was owed money on that contract. The government filed a timely proof of claim for taxes, and then set off against the sum it owed to the bankrupt on the contract the amount of taxes, penalties and interest owed by the bankrupt to the government. The Referee disallowed the penalties and interest, and held that the money received by IRS from the Navy should only be applied to the taxes due. The United States appealed from that decision.

The Sixth Circuit viewed the government's debt to the bankrupt on the contract as an asset of the bankrupt estate. Further, the court noted that the inter-agency accounting of the government vis-à-vis the proof of claim placed the fund within the jurisdiction of the bankruptcy court for purposes of allowing the court to assess the claim.

Although the Sixth Circuit recognized the government's right to a set-off for the tax claims, the court noted that § 108 relied upon by the government to justify the inter-agency set-off, "is not self-executing, and the benefits available under it can be had only on action by the bankruptcy court properly invoked." 344 F.2d at 908. The court, then, indicated that it is the Referee in Bankruptcy, and not, for example, the Comptroller General, who actually determines the merits of a set-off claim. This court agrees with that proposition.

In addition, the government argued in that case that since § 108(b) does not refer to 11 U.S.C. § 93(j), which prohibits the collection of penalties, a set-off for penalties was proper. The Sixth Circuit strongly disagreed. The court stated:

"We are not bound to choose between these two views. Section 57, sub. j [title 11 U.S.C. § 93(j)] definitely disallows the collection of penalties against a bankrupt estate. This section and Section 68 must be read so as to give effect to both. Certainly Congress never intended to bar the collection of penalties in one section of a statute and then by another section of the same statute permit them to be collected through a set-off. We must construe Section 68 to refer only to debts that may be legally collected." 344 F.2d at 908.

This court finds the reasoning of the Sixth Circuit persuasive. The Referee is required by 11 U.S.C. § 93(n) to allow tardy claims against surplus only. Section 108 permits a debtor-creditor of the bankrupt to set off certain funds in his possession against a claim. Had the Comptroller General set off the money against the IRS claim first, and then allowed the excess, if any, to be used as a set-off for the claims of DSA and HEW, it is likely that such action would be permissible. But the court is not faced with that situation. Instead, the Comptroller General first used the money for the purpose of satisfying the two

tardily filed claims. His distribution to HEW and DSA reduced the sum available as a set-off for the timely filed claim of IRS. IRS, however, is entitled to recover affirmatively from the bankrupt estate pursuant to 11 U.S.C. § 104(a) (4). HEW and DSA could not do so. By relying on § 108, then, the Comptroller General has circumvented 11 U.S.C. § 93(n).

This court holds that in allocating the full sum held by the Army as a set-off for IRS, the Referee properly exercised his discretion. The court further finds that the action of the Referee in denying any set-off for HEW and DSA was a proper construction of both 11 U.S.C. § 93(n) and § 108. Section 108 must be construed in harmony with the other provisions of the Bankruptcy Act. United States v. Roth, 164 F.2d 575 (2d Cir. 1948).

The numerous cases recognizing the government's right of set-off as a creditor are not in conflict with the decision reached herein. *See, e. g.,* United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); United States v. Cohen, 389 F.2d 689 (5th Cir. 1967); Madden v. United States, 371 F.2d 469 (Ct.Cl.1967); Shay v. Agricultural Stabilization and Conservation State Committee for Arizona, 299 F.2d 516 (9th Cir. 1962); Seaboard Surety Co. v. United States, 67 F.Supp. 969, 107 Ct.Cl. 34 (1946), cert. denied, 330 U.S. 826, 67 S.Ct. 863, 91 L.Ed. 1275 (1947). These cases clearly establish the view that:

> "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'"

United States v. Munsey Trust Co., *supra,* 332 U.S. at 239, 67 S.Ct. at 1602 citing McKnight v. United States, 98 U.S. 179, 186, 25 L.Ed. 115 (1879).

In United States v. Cohen, *supra,* for example, the Fifth Circuit recognized that the General Accounting Office is charged with the responsibility of administratively settling the government's accounts. *Accord,* United States v. American Surety Co. of New York, 158 F.2d 12 (5th Cir. 1946). The court further acknowledged that the Comptroller General is authorized to make set-offs. In Seaboard Surety Co. v. United States, *supra,* the Court of Claims found that 31 U.S.C. § 71[5] enables the United States to apply any sum due by it as a set-off for a debt due to the United States.

Nevertheless, none of the aforementioned cases recognizing the government's right as a creditor to the same rights of set-off as any other creditor, involved bankruptcy matters. In United States v. Kalishman, 346 F.2d 514 (8th Cir. 1965), cert. denied, 384 U.S. 1003, 86 S.Ct. 1913, 16 L.Ed.2d 1017 (1966), the Eighth Circuit stated:

> In bankruptcy matters the Bankruptcy Act takes precedence over other statutes, and governs in any case where there might be a conflict. [Citations omitted]. Thus, in the matter of priorities the courts are bound by the terms of the Act, regardless of other statutory preferences. [Citations omitted]."

346 F.2d at 517.

### C. *Priority to Debts Owing to United States*

Although the United States has not argued that 11 U.S.C. § 104(a)(5) or 31 U.S.C. § 191 entitles the government to priority for the claims of HEW and DSA, a brief discussion of that subject is warranted. Title 11 U.S.C. § 104(a) (5) provides:

> "104. Debts which have priority.— (a) The debts to have priority, in advance of the payment of dividends

---

5. 31 U.S.C. § 71 provides:
   "All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office."

to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be . . . (5) debts owing to any person, including the United States, who by the laws of the United States in [is] entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law: Provided, however, That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy."

Title 31 U.S.C. § 191 provides in pertinent part:

"Whenever any person indebted to the United States is insolvent, . . . the debts due to the United States shall be first satisfied . . . ."

The former statute (§ 104(a)(5)) does not give debts owing to the United States priority in bankruptcy. It gives fifth priority status to debts owing to any person where the laws of the United States give that priority. In only two instances do the laws of the United States give such priority. The two instances are 11 U.S.C. § 104(a)(4) and 31 U.S.C. § 191. 3A Collier's on Bankruptcy ¶ 64.502[1], at 2249.

█ In United States v. Belkin, 358 F.2d 378 (6th Cir. 1966), the government filed a *timely* proof for a non-tax claim, asserting priority in full under 11 U.S. C. § 104(a)(5) and 31 U.S.C. § 191. The Sixth Circuit agreed that the United States was entitled to such priority. However, it is clear that the filing of a proof of claim by the government is statutorily required even in priority matters. In the matter of Connecticut Motor Lines, Inc., 336 F.2d 96 (3d Cir. 1964).

In Connecticut Motor Lines, *supra,* the government did not make a timely proof of claim for taxes and thus was not entitled to fourth priority status under 11 U.S.C. § 104(a)(4). The Third Circuit said:

"The Government is placed in no superior position here. Its inability or failure to file such proof of claim naturally results in a distribution of assets elsewhere. Such a result should not be surprising. It is commonplace." 336 F.2d at 107.

In the same way, this court does not find that the government was entitled to priority under 11 U.S.C. § 104(a)(5) and 31 U.S.C. § 191 when HEW and DSA did not make timely proofs of claim.

For the reasons herein stated, the order of the Referee, dated May 10, 1973 (Paper No. 96) was validly entered. The petition for review will be dismissed and the case remanded to the Referee [6] for further proceedings, costs of this appeal to be taxed to the United States.

---

6. Rule 901(7) of the New Bankruptcy Rules designates the Referee as a Bankruptcy Judge.